SUPERIOR CLAY CORP. *v.* CLAY SEWER PIPE ASSN.

(No. 213441—Decided January 5, 1963.)

Common Pleas Court, Franklin County, Ohio.

*Messrs. Knepper, White, Richards, Miller & Roberts,* for plaintiff.
*Messrs. Myers, Wait & Ashbrook,* for defendant.

GESSAMAN, J. This cause is presented to the court upon the motion of defendant for summary judgment in its favor on plaintiff's petition and on defendant's counterclaim. The case is at issue in all respects. Plaintiff has filed a motion for summary judgment in its favor on its petition and at the same time has moved to dismiss defendant's counterclaim on the ground that this court does not have jurisdiction of the subject matter thereof. We shall consider the motions for summary judgment on the petition and the amended answer thereto, first.

Plaintiff seeks a declaratory judgment "as to the respective rights, status, duties, liabilities and other legal relations of

the parties'' under a contract concerning the use and sale of certain patented articles. The contract is set forth in full in the petition.

Stated as briefly as possible, the facts are that the Robinson Clay Products Company is the owner of certain patents applicable to the joints of clay pipes. In 1954, that company granted an exclusive license under these patents to the defendant. This grant is evidenced by an agreement executd May 1, 1954, a copy of which is attached to the affidavit of Reva D. Smart, secretary-treasurer of defendant, filed in support of defendant's motion. Paragraph 2 of that agreement provides as follows:

''2. It is agreed between the parties hereto that the Association shall exercise the license granted in paragraph 1 hereof, by granting non-assignable sub-licenses in writing to members in good standing in The Association as provided in its Articles of Incorporation and Code of Regulations as long as they remain in good standing.''

Paragraph 10 of the agreement between plaintiff and defendant (executed July 19, 1954) provides in part that

''if the 'Company,' or its successor, shall fail to maintain its membership in the 'Association' in good standing, according to the Articles of Incorporation and Code of Regulations of said 'Association,' then, * * *, the 'Association' may give written notice of such breach to the 'Company,' and if the 'Company' shall fail to fully repair such breach within ten (10) days from the receipt by the 'Company' of such notice, the 'Association' may cancel and terminate this sub-license by giving written notice to the 'Company.' ''

Plaintiff says that it has complied with all of the provisions of the contract and that ''as of approximately January 1, 1962, plaintiff ceased to maintain its membership in the defendant association, and resigned therefrom.'' Plaintiff further alleges that on March 2, 1962, defendant notified plaintiff, in writing, that it intended to cancel and terminate the sub-license granted under the contract of July 19, 1954. Plaintiff seeks to enjoin defendant from cancelling or terminating the sub-license granted under that contract.

Counsel for the plaintiff contend that the maintenance of membership condition of the sub-license is invalid and unen-

forceable for the reasons that it "is in restraint of trade as an interference with interstate commerce engaged in by the plaintiff."

In *United States* v. *General Electric Company et al.,* 272 U. S. 476, the court said at page 485 of the opinion:

"But under the patent law the patentee is given by statute a monopoly of making, using and selling the patented article. The extent of his monopoly in the articles sold and in the territory of the United States where sold is not limited in the grant of his patent, and the comprehensiveness of his control of the business in the sale of the patented article is not necessarily an indication of illegality of his method. As long as he makes no effort to fasten upon ownership of the articles he sells control of the prices at which his purchaser shall sell, it makes no difference how widespread his monopoly. It is only when he adopts a combination with others, by which he steps out of the scope of his patent rights and seeks to control and restrain those to whom he has sold his patented articles in their subsequent disposition of what is theirs, that he comes within the operation of the Anti-Trust Act."

There is nothing in the contract between the parties hereto by which the defendant has attempted to control prices. Furthermore, there is no provision in the contract by which the defendant has attempted in combination with others to control and restrain the plaintiff in its subsequent disposition of what belongs to it.

In the case of *Automatic Radio Manufacturing Co., Inc.,* v. *Hazeltine Research, Inc.,* 339 U. S. 827, the court held that it is not per se a misuse of patents to require the licensee to pay royalties on a percentage of its sales even though none of the patents is used. It also held that the royalty provision did not create a monopoly nor did it create a restraint of competition beyond the legitimate grant of the patent.

In support of plaintiff's motion, there has been filed an affidavit of S. G. McClave, president of the plaintiff company, in which the amounts are set forth that have been paid annually by plaintiff to the defendant, presumably as membership dues. For the years 1955 to 1961, inclusive, the total is $119,101.67. It appears from the affidavits and the briefs that these amounts are figured on the basis of total sales of the plaintiff company.

Whether they are called membership dues or royalties, is of no importance. The fact is that the practice has been approved in the *Hazeltine case, supra.*

Counsel for the plaintiff also contend that "the 'maintenance of membership' clause is an illegal 'tie-in' agreement." Such an attempt, if made in a combination with others, would fall within "the operation of the Anti-Trust Act," referred to in the *General Electric case, supra.* However, there is nothing before the court which discloses any such attempt, either alone or in a combination with others. The rule with respect to "tie-in agreements" is stated in 40 American Jurisprudence 634, Patents, Section 145, as follows:

"A patentee may not, by virtue of his patent, condition his license so as to tie to the use of the patented devise or process the use of other devices, processes or materials which lie outside of the monopoly of the patent licensed or condition the license so as to control conduct by the licensee not embraced in the patent monopoly."

We have no quarrel with the soundness of that rule but very frankly do not feel that anything in the "maintenance of membership clause" violates it. Whether the sums paid to defendant by the plaintiff are called membership dues or royalties is of no importaince. The fact is that there is nothing in any agreement between the parties which violates the "tie-in" rule.

Counsel for the plaintiff contend that the membership dues requirement "became increasingly burdensome to the plaintiff." This does not invalidate the provisions nor does it give to the plaintiff the right to "resign" its membership without losing all of the rights that had been granted to it on condition that it maintain its membership in the defendant association.

Counsel for the plaintiff also contend that the sum of $2,000.00 paid by plaintiff under paragraph 6 of the contract was "payment in full for all rights granted under this sub-license agreement." This is correct. But when the "rights granted under this sub-license agreement" are examined from the entire document—as they must be— it will readily be seen that all rights are granted subject to certain conditions. The conditions must be met by the plaintiff or the rights are lost. To hold otherwise would be to classify the contract between these parties as an outright sale of patent rights for the sum

of $2,000.00. No such conclusion can be reached when the agreement as a whole is considered.

On the motions of the parties for summary judgment, our conclusion is that the motion of the defendant must be sustained and that of the plaintiff overruled. An entry may be prepared accordingly.

In the consideration of plaintiff's motion to dismiss defendant's amended counterclaim, our attention is directed to 28 U. S. Code, Section 1338. Paragraph (a) of that section provides that:

"(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases."

In *The Fair* v. *Kohler Die & Specialty Co.*, 228 U. S. 22, the court held that

"Where plaintiff relies upon infringement of his patent and nothing else, the cause, whether good or bad, is one under the laws of the United States and the Circuit Court has jurisdiction; * * *."

See also *In re Hohorst*, 150 U. S. 653, at page 661.

In paragraph 4 of the amended counterclaim, defendant alleges:

"4. That plaintiff is now infringing and threatens to continue to infringe said letters Patent by making, using and selling the pipe joints described therein in the territory covered by defendant's exclusive license without defendant's license or consent and to defendant's irreparable damage."

From this, and in fact from a complete consideration of the amended counterclaim, it is apparent that the cause of action is for an alleged infringement of defendant's patent rights. Therefore the District Court of the United States has exclusive jurisdiction of the subject matter. This court does not have jurisditcion.

Counsel for the defendant contend that "where the main issue is a matter of state law and patent validity or infringement is an incidental issue, the state courts may take jurisdiction." Whether this is or is not the rule need not be determined. It is only necessary to point out that on the counter-

claim "the main issue" is not a matter of state law. The "main issue" is patent infringement and that is a question under Federal law.

By virtue of Section 2309.22, Revised Code, "The plaintiff may demur to a counterclaim, upon which the defendant demands affirmative relief, when it appears on its face that:

"(A) The court has no jurisdiction of the subject thereof; * * *."

The motion to dismiss will be treated as such a demurrer and as such sustained.

*Judgment accordingly.*