TEWARSON, Appellant,

v.

SIMON, Appellee.

[Cite as *Tewarson v. Simon* (2001), 141 Ohio App.3d 103.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 99CA007526.

Decided Jan. 3, 2001.

104

*Douglas J. Paul,* for appellant.

*Jori Bloom Naegele, Robert D. Gary* and *Thomas A. Downie,* for appellee.

---

Batchelder, Presiding Judge.

Appellant, Heidi Thomann Tewarson, appeals the judgment of the Lorain County Court of Common Pleas. We affirm in part and modify the trial court's judgment entry.

## I

Fritz Simon was a highly decorated veteran of WWI and was seriously wounded during the war. Due to his wounds, he lost his sight and ability to sense smells. Minni Simon and Fritz Simon were married on May 16, 1934. Both Mr. and Mrs. Simon were German. They were also Jewish, and hence, became targets of the anti-Semitic policies that were set in motion by the rise of

Hitler and the N.S.D.A.P. In 1942, Mr. and Mrs. Simon were transported to the German concentration camp known in German as Theresienstadt. Theresienstadt (located near Terezin in what is now the Czech Republic) was a "model" ghetto located near Prague. It was used, at times, to create a false image that the Jews being held in the camps were being treated well. The facts, however, were much different, with most internees either dying of disease due to mistreatment and malnutrition or being deported to death camps. At the time she was deported to Theresienstadt, Mrs. Simon was pregnant with Michael J. Simon, appellee.

Michael J. Simon was born on January 8, 1943 in Theresienstadt. He is the youngest living Holocaust survivor, being one of five children of the approximately two hundred children born in Theresienstadt to survive. After their release from Theresienstadt, Mr. Simon, Mrs. Simon, and Michael Simon immigrated to the United States.

Mrs. Simon kept diaries from the N.S.D.A.P.'s rise to power in the 1930s through her internment in Theresienstadt. After he recuperated from his injuries in WWI, Mr. Simon studied law in Germany. He kept diaries from that point through his internment in Theresienstadt. Mr. and Mrs. Simon brought their diaries and certain other artifacts from their internment in Theresienstadt with them to the United States.

Upon the death of his parents, Michael Simon inherited the diaries and other artifacts, which included Michael Simon's medical records, personal correspondence between his mother and her sister Else Zacharias in New York, letters and notes on scraps of paper through which Mr. and Mrs. Simon had communicated while in Theresienstadt, correspondence between Zacharias and Heinrich Bruning, former chancellor of Germany, who became a professor at Harvard University, concerning Zacharias's efforts to obtain visas for Mr. and Mrs. Simon, and numerous medals from Mr. Simon's service in WWI, identity cards, badges, photographs, and other personal items.

Wishing to understand what his parents, and, indeed, what he himself had experienced, Michael Simon sought to have the diaries translated as he was not highly fluent in written German. Moreover, although his father's diaries were originally in Braille, his mother had transcribed them into German longhand, while her diaries were still in their original format consisting of archaic German shorthand. While Michael Simon could read some of his father's diaries, he could not read any of the archaic shorthand in his mother's diaries. To the end of having the diaries translated, he contacted several organizations that conduct research about the Holocaust and, eventually, contacted the German language department at Oberlin College ("Oberlin"). Michael Simon initially hired some German language students to translate parts of the diaries, but, in early 1996, he

met with appellant, Heidi Thomann Tewarson, regarding the complete translation of the diaries. Michael Simon agreed to give Tewarson the diaries to be translated so that he could determine whether to have them published and what parts should be omitted due to their personal nature. His mother's diaries would have to be transcribed from archaic German shorthand into modern German and then translated into English, while his father's diaries could be translated directly into English. Tewarson could largely accomplish the translations herself but she would have to hire someone to transcribe the shorthand into modern German.

Michael Simon turned possession of the diaries and artifacts over to Tewarson in early 1996. He soon moved to Los Angeles, California to pursue his career but kept in contact with Tewarson via letter and fax. Michael Simon repeatedly requested to be kept apprised of Tewarson's progress in translating the diaries; however, Tewarson responded with only general information regarding her progress. As the correspondence became more heated, she included more information, and by June 1998, she had sent Michael Simon portions of the transcriptions/translations of the diaries. On June 25, 1998, Tewarson sent Michael Simon a written contract regarding the rights to and publication of the contents of the diaries. Michael Simon refused to sign the contract. He soon demanded the return of the diaries and other artifacts from Tewarson.

On August 21, 1998, Tewarson filed a complaint in the Lorain County Court of Common Pleas seeking declaratory judgment regarding her rights to the original documents and materials entrusted to her by Michael Simon and her rights to the transcriptions and translations of the original documents, along with other materials that were the product of her own scholarship. On November 20, 1998, Michael Simon filed an answer and a counterclaim for replevin of his parents' original documents and materials and for an injunction preventing Tewarson from publishing any research, books, papers, theses, and the like, formed as a result of the entrustment of the original documents and materials to her. The case was tried to the bench on November 16, 1999. On November 17, 1999, the trial court entered judgment in favor of Michael Simon, finding, *inter alia*, that no oral contract between him and Tewarson existed as to publication and, accordingly, that Tewarson had no right to publish the transcriptions and translations of the diaries or retain the originals. This appeal followed.

## II

Tewarson asserts five assignments of error. We will address each assignment of error in turn, consolidating the first three and last two assignments of error to facilitate review.

## A.

## JURISDICTION

### First Assignment of Error

"The judgement [*sic*] issued was beyond the subject matter jurisdiction of the Court of Common Pleas of Lorain County."

### Second Assignment of Error

"The judgment of the trial court, based solely upon state contract law, is in error since it determined and limited appellant's rights in an area pre-empted by federal law."

### Third Assignment of Error

"The judgement [*sic*] of the trial court is inconsistent with federal copyright law."

Tewarson avers that the trial court lacked subject-matter jurisdiction over the instant action because it is one that sounds in copyright, and, therefore, the trial court's judgment must be vacated. Further, she asserts that the trial court's order improperly relies on state law that has been preempted by federal law and that the trial court misconstrued federal law. We disagree to the extent that her complaint and Michael Simon's counterclaim sound in contract and, specifically, regarding that portion of the trial court's order that depends upon the interpretation and enforcement of the alleged contract. However, we modify the trial court's holding in so far as we find that it determines the parties' rights under copyright law.

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." Section 1338(a), Title 28, U.S. Code. "[T]he statutory phrase 'arising under the Constitution, laws, or treaties of the United States' has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *California Franchise Tax Bd. v. Constr. Laborers Vacation Trust for Southern California* (1983), 463 U.S. 1, 8, 103 S.Ct. 2841, 2845–2846, 77 L.Ed.2d 420, 430.

We are guided in our determination of whether jurisdiction is vested in the state or federal court by the "well-pleaded complaint" rule. *Id.* at 9–10, 103 S.Ct. at 2846, 77 L.Ed.2d at 430–431. Jurisdiction is vested in the federal courts only where a federal question is presented on the face of the complaint. *Id.* The

party bringing the action is the "master of the claim." *Caterpillar, Inc. v. Williams* (1987), 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318, 327. Moreover, a defendant cannot create jurisdiction by pleading a counterclaim that presents a federal question. *Rath Packing Co. v. Becker* (C.A.9, 1975), 530 F.2d 1295, 1303, affirmed *sub nom. Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604.

The converse is also true. A plaintiff cannot defeat removal to federal court by artfully pleading a federal claim as a state claim; and, in that instance, a court should recharacterize the complaint accordingly. *Federated Dept. Stores, Inc. v. Moitie* (1981), 452 U.S. 394, 397, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103, 108, fn. 2. However, the artfully pleaded complaint doctrine applies only in areas of law where the plaintiff's state law claim has been completely preempted by federal law. *Metro. Life Ins. Co. v. Taylor* (1987), 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55, 63.

Tewarson asserts, first, that the trial court lacked jurisdiction because jurisdiction over matters of copyright is vested solely with the federal district courts. While this is true, we disagree that Tewarson's complaint stated a cause of action arising under copyright law.

In determining whether jurisdiction is vested with the federal or state courts, we must determine whether the plaintiff has alleged a claim arising under the federal Copyright Act in his or her complaint. *T.B. Harms Co. v. Eliscu* (C.A.2, 1964), 339 F.2d 823, 828. "[A] suit 'arises under' the Copyright Act if * * * (1) 'the complaint is for a remedy expressly granted by the Act, *e.g.,* a suit for infringement or for the statutory royalties for record reproduction * * *'; or, (2) 'the complaint * * * asserts a claim requiring construction of the Act.'" *Bassett v. Mashantucket Pequot Tribe* (C.A.2, 2000), 204 F.3d 343, 349, quoting *T.B. Harms Co.,* 339 F.2d at 828. "When a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked." *Bassett,* 204 F.3d at 355.

The complaint in the instant action sought a declaration of "the rights and duties of the parties pursuant to the Agreement" to the documents and translations. "However, the bare claim of a right to publish, without more, does not give rise to an infringement action." *Borden v. Katzman* (C.A.11, 1989), 881 F.2d 1035, 1038. Tewarson states no claims under copyright law in her complaint in terms of infringement. Further, a determination of the rights of the parties under the contract disposes of any copyright question, as the contract is the asserted basis of the parties' rights under the copyright. Tewarson's claim does not involve an attempt to enforce a copyright. In fact, Michael Simon (hereinafter "Simon") made the applicable copyright filings after Tewarson filed suit. As

noted above, we must look to the complaint, rather than the counterclaim, even if it does assert federal questions. Finally, we need not construe federal copyright law to resolve the issues herein, as we need not look beyond the alleged agreement.[1]

Tewarson does not aver that Simon has copied or reproduced the work, and "[i]n the absence of copying or reproducing a copyrighted work, there can be no infringement under the copyright laws." *Id.,* citing *Mazer v. Stein* (1954), 347 U.S. 201, 218, 74 S.Ct. 460, 471, 98 L.Ed. 630, 642–643. "Infringement, as used in copyright law, does not include everything that may impair the value of the copyright; it is doing one or more of those things which [the Copyright Act] reserves exclusively to the copyright owner." *T.B. Harms Co.,* 339 F.2d at 825. Accordingly, we conclude that the trial court properly exercised jurisdiction over the instant complaint because the claims presented by Tewarson in her complaint sounded in contract, and hence, were governed by state law. See *Borden,* 881 F.2d at 1038–1039.

Simon's counterclaim, however does, in part, sound in copyright law. While his replevin action is one for the return of personal property, which property is subject to a copyright, ownership of the property is a question of state law. See R.C. Chapter 2737. However, Simon also seeks a declaration of his exclusive right to publish and a declaration that Tewarson may not publish, excerpt, or in any way use any portion of the transcribed and translated diaries without Simon's consent. These questions must be resolved under the Copyright Act and are ones of federal law, as no contract existed between the parties as to publication rights.[2] A declaration of who has the right to publish a work and excerpt from a work would require reference to the Copyright Act and would be controlled by that Act. Pursuant to Section 1338(a), Title 28, U.S. Code, federal courts have original and exclusive jurisdiction over claims arising under federal copyright law. We conclude that, while federal courts possess supplemental jurisdiction over state-law counterclaims, state courts do not have corresponding authority over claims over which federal courts have exclusive jurisdiction. See *Am. Home Prods. Corp. v. Norden Laboratories, Inc.* (Dec. 11, 1992), Del.Ch. No. 11615, unreported, 1992 WL 368604, at * 3; see, also, *Superior Clay Corp. v. Clay*

---

1. The trial court correctly determined that no contract was entered into by the parties concerning publication rights due to a lack of mutual assent to the contract. See, *infra,* weight-of-the-evidence analysis. Accordingly, no contract existed, and we need not reach the issue of the enforceability of an oral contract to transfer the exclusive right to copy Simon's diaries under copyright law. See Section 204, Title 17, U.S. Code. (Tewarson's attorney averred at trial that the agreement was not for the exclusive right to publish the diaries.)

2. The trial court correctly found that no contract concerning publication rights existed between the parties. See, *infra,* weight-of-the-evidence analysis.

*Sewer Pipe Assn.* (1963), 5 Ohio Misc. 247, 251–252, 34 O.O.2d 492, 495, 215 N.E.2d 437, 440; *EMSA Ltd. Partnership v. Lincoln* (Fla.App.1997), 691 So.2d 547, 549. Moreover, although Civ.R. 13(A) mandates that a counterclaim be asserted if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," we adduce that the counterclaim for declaratory judgment of Simon's rights under copyright law does not arise out of the subject matter of Tewarson's contract action. See *W. Elec. Co. v. Components, Inc.* (Dec. 7, 1970), Del.Ch. No. 2820, unreported, 1970 WL 458, at *1–*2. Accordingly, we conclude that the trial court lacked jurisdiction over Simon's counterclaim for declaratory judgment.

Tewarson next avers that even if the trial court had jurisdiction, the trial court improperly based its ruling on state law that has been preempted by federal law. "Copyright preemption is both explicit and broad: [Section] 301(a) [Title 17, U.S. Code] prohibits state-law protection for any right equivalent to those in the Copyright Act." *G.S. Rasmussen & Assoc. Inc. v. Kalitta Flying Serv., Inc.* (C.A.9, 1992), 958 F.2d 896, 904. However, "[i]t is clear, as the *T.B. Harms* case counsels, that a dispute over the terms or the enforceability of a contract to transfer the exclusive rights comprised in a copyright is wholly a state law matter. Contract questions that depend upon common law or equitable principles belong in state court even if they involve copyrights." (Citation omitted.) *Borden v. Katzman*, 881 F.2d at 1038. Therefore, we conclude that the trial court did not err in determining Tewarson's contract action under state contract law.

We hold that the trial court did have jurisdiction over Tewarson's claims concerning the agreement and that such claims were not preempted by federal copyright law. Further, the trial court had jurisdiction over Simon's defense against the contract action and his state law replevin action. Although, the trial court correctly concluded that there was no contract between the parties concerning publication, and, therefore, could not determine the parties' rights to publication of these diaries without determining questions under the Copyright Act, the federal courts have exclusive jurisdiction over claims arising under the Copyright Act. Therefore, the trial court lacked jurisdiction over that portion of Simon's counterclaim. Accordingly, we modify the last full paragraph of the trial court's judgment entry[3] to read: "This court further finds that a full copy of every

---

3. The full paragraph to be modified in the trial court's November 17, 1999 judgment entry reads:

   "This court further finds that a full copy of every transcription and translation shall be provided to Mr. Simon by December 1, 1999. There can be no publishing of the work that includes the dairies or memoirs without his consent. Plaintiff is entitled to any historical research that she has done on her own[;] however, she may not use the dairies or memoirs or

transcription and translation shall be provided to Mr. Simon by December 1, 1999. Mr. Simon did not transfer any rights of publication which he may enjoy under Federal Copyright Law to Ms. Tewarson by the agreement alleged herein."

Tewarson's first three assignments of error are sustained to the extent that we modified the trial court's order. In remaining part, they are overruled.

## B.

## WEIGHT OF THE EVIDENCE

### Fourth Assignment of Error

"The judgement of the trial court granting a replevin to the appellee is inconsistent with the law of the state of Ohio."

### Fifth Assignment of Error

"The judgement was not supported by the weight of the evidence produced at trial."

Tewarson asserts that the trial court erred in granting Simon replevin of his property because he did not show that he had terminated the grant of his property to her and by ordering property that was hers—namely the English translations—to be given to Simon. In essence, Tewarson asserts those portions of the trial court's order granting replevin to Simon and granting Simon copies of the translations were against the manifest weight of the evidence. Further, Tewarson asserts that the trial court's finding that the agreement between Tewarson and Simon was, at most, for the transcription and translation of the diaries and that there was no agreement to allow Tewarson to publish the diaries in a book along with her own commentaries is against the manifest weight of the evidence. We disagree.

Initially, we note that the trial court granted a directed verdict pursuant to Civ.R. 50 regarding the alleged oral agreement. The trial court found that there was an agreement that Tewarson would provide Simon with copies of the transcriptions and translations in return for access to the documents. The trial court's order granting Simon copies of the translations was not in regard to the replevin claim but in regard to the contract claim. Further, the trial court's grant of replevin was not pursuant to Civ.R. 50 but an entry of judgment based upon the merits of the evidence adduced at trial.

---

translations or transcriptions of same without the express written permission of Michael Simon."

A motion for directed verdict is inappropriate in a bench trial. *Hamilton v. Long* (1990), 67 Ohio App.3d 846, 848, 588 N.E.2d 942, 943 (Harsha, J., concurring). This court has previously held that " '[w]hen a case is tried without a jury, a motion for judgment at the conclusion of the plaintiff's case is one for dismissal under Civ.R. 41(B)(2).' " *Ramco Specialties, Inc. v. Pansegrau* (1998), 134 Ohio App.3d 513, 520, 731 N.E.2d 714, 719, quoting *Krysa v. Sieber* (1996), 113 Ohio App.3d 572, 579, 681 N.E.2d 949, 953. "A directed verdict is based on insufficiency of evidence, while dismissal of the plaintiff's case in a bench trial allows the trial court to weigh the evidence, resolve any conflicts, and render judgment in favor of the defendant if the plaintiff has shown no right to relief." *Ramco Specialties, Inc.*, 134 Ohio App.3d at 520, 731 N.E.2d at 719.

Here, however, the motion for directed verdict was made at the close of all evidence. If it had been made at the close of plaintiff's case, the trial court would not have been required to construe the evidence in a light most favorable to the nonmoving party, but rather may have weighed the evidence and rendered judgment. *In re Estate of Fugate* (1993), 86 Ohio App.3d 293, 297, 620 N.E.2d 966, 968. Accordingly, "[t]he dismissal will be set aside only if erroneous as a matter of law or against the manifest weight of the evidence."[4] *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 63, 571 N.E.2d 442, 444.

When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." *Ray v. Vansickle* (Oct. 14, 1998), Lorain App. Nos. 97CA006897 and 97CA006907, unreported, 1998 WL 716930, at * 1. " 'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350, 1357. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." *Id.*

---

4. At the close of the bench trial, counsel for Mr. Simon requested that the court's finding be "both on the directed verdict motion and on the merits[.]" The court responded "Okay." Hence, the trial court's intent appears to have been to enter judgment based on the merits as well as on the Civ.R. 50 motion to dismiss.

■ We will first determine what agreement, if any, existed between the parties. Tewarson stated in her complaint that after her work was completed, she was to give Simon back the original documents and a copy of the transcriptions. However, Tewarson argues that her work included the writing of a book concerning the diaries. Moreover, she asserts that she was to have the right to publish, in her book, the translated diaries without any editorial control by, or remuneration to, Simon. The evidence at trial showed that Simon offered to help pay for the transcription process of his mother's diaries from archaic shorthand to modern German. Further, Simon testified that he was to have access to the translations. The witnesses disagreed as to what was said between Tewarson and Simon regarding the publication rights, but it was abundantly clear that the discussions were never solidified into an agreement on the issue of publication.

There was an apparent agreement that Simon would allow Tewarson access to the diaries and artifacts so that she could complete a full translation. Moreover, Simon had previously employed students in Oberlin's German language department to translate the diaries. While it was apparent from the evidence adduced at trial that Simon wished to have the diaries translated, it was also apparent that he wished to retain control over the dissemination of the content of the diaries. Tewarson attempted to obtain Simon's signature on a contract allowing her publication rights and editorial control; this attempt was rebuffed. Simon had previously paid students to translate the diaries and had offered to subsidize Tewarson's work as well. However, Tewarson received grants from various organizations that funded her work, so Simon's funds were not needed. Accordingly, we conclude that the trial court did not act against the manifest weight of the evidence by finding that the parties had not entered into an agreement regarding the publication of the diaries, but rather, only for their transcription and translation.

■ Regarding the terms of the contract for transcription and translation, the trial court determined that the only agreement between the parties was that Tewarson would have the diaries transcribed, as necessary, into modern German and then translate the diaries in exchange for access to the documents and artifacts. This determination was not against the manifest weight of the evidence. The evidence adduced at trial showed that Simon offered to help pay for the transcription process of his mother's diaries from archaic shorthand to modern German. Further, Simon testified that he was to have access to the translations. Tewarson conceded that the parties agreed that she was to provide Simon with the transcriptions. Therefore, we cannot conclude that the trial court acted against the manifest weight of the evidence in determining that part of the consideration that Simon was to receive for allowing Tewarson access to the documents was a copy of the transcriptions and translations. "As a general rule,

a contract, being founded upon the meeting of minds between contracting parties, contains only such terms as are agreed upon, and no others." *Measel v. AAA Millwright, Inc.* (Feb. 8, 1985), Montgomery App. No. 8374, unreported, 1985 WL 7640, at *3. Accordingly, the trial court did not err in ordering Tewarson to provide Simon with copies of the transcriptions and translations or in finding that no enforceable contract existed as to the transfer of publication rights.[5]

Next, we must determine what the agreement of the parties was in regard to the possession of the diaries and other artifacts. Once the terms of the agreement are adduced, we can determine when, if at all, Tewarson's possession of the property was no longer sanctioned by that agreement. If Tewarson's possession of the property was no longer sanctioned by the agreement, Simon had the right to replevin his property, and the trial court did not err in granting replevin to him.

"An action in replevin is founded upon an unlawful detention, regardless of whether an unlawful taking has occurred. The action 'is strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property.'" (Citation omitted.) *Black v. Cleveland* (1978), 58 Ohio App.2d 29, 32, 12 O.O.3d 36, 38, 387 N.E.2d 1388, 1390.

Tewarson concedes that the ownership of the original documents was and remains with Simon. Therefore, the parties agree that Simon owns the original documents. The remaining issue is whether Tewarson's right to possess the documents and artifacts ended when the transcription process was completed. The record further discloses that the transcription is complete but that Tewarson's work on her book about the diaries is not. Moreover, on June 2, 1998, Simon demanded that Tewarson "[r]eturn all my material now, to my office address."

Simon testified that he believed he could retrieve his property at anytime. Tewarson's testimony was not clear as to why she continues to require the original documents and artifacts when high quality photographs and photocopies could be made. However, Simon did voluntarily relinquish the documents and artifacts to Tewarson's custody for the purpose of making transcriptions and

---

5. Tewarson asserts an unjust enrichment claim in her brief to this court. However, this issue was not raised before the trial court and is not properly before this court. Even if this claim was properly brought on appeal, unjust enrichment is an action in quasi-contract and is implied by law where there was no meeting of the minds, but it would be unjust to allow one party to retain benefits which he or she was not entitled to under contract without paying for those benefits. See *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6–7, 540 N.E.2d 257, 263–264. This legal theory is not applicable where, as here, there was an agreement and the court is enforcing the agreed upon terms of the contract. See *id.*

translations. Upon review of the record, we cannot conclude that the trial court acted against the manifest weight of the evidence in determining that, once the transcriptions were complete, Simon had fulfilled his obligation under the agreement by allowing Tewarson to retain possession of the original documents and artifacts for the purpose of preparing the transcription; therefore, Tewarson no longer had any right to retain Simon's property under the agreement. Hence, we conclude that the trial court did not err in granting Simon replevin of the diaries and other artifacts. Tewarson's fourth and fifth assignments of error are overruled.

## III

Tewarson's first three assignments of error are sustained in part and the trial court's order is modified accordingly. In remaining part, Tewarson's five assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part and modified in part.

*Judgment affirmed in part,*
*and modified in part.*

WHITMORE and CARR, JJ., concur.