DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Vicki K. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated one of her minor children abused, neglected and dependent; adjudicated two other minor children dependent; and placed the three children in the temporary custody of Summit County Children Services Board ("CSB"). We affirm.
 I. {¶ 2} Mother has three minor daughters, A.K., born January 16, 1993; C.K., born January 27, 1994; and R.K., born November 26, 1996.[1] All three children were removed from the home on February 24, 2006, pursuant to Juv.R. 6. The police had received information that A.K., then 13 years old, had been involved in a long-term sexual relationship with an adult male and that Mother was aware of the relationship but allowed it to continue. CSB's complaint further alleged that Mother facilitated her daughter's relationship with the adult male and exposed her other children to it as well.
 {¶ 3} On May 26, 2006, the trial court held an adjudicatory hearing. Immediately after hearing evidence on adjudication, by agreement of the parties, the trial court considered evidence pertaining to disposition. The trial court adjudicated A.K. an abused, neglected, and dependent child; and adjudicated C.K. and R.K. dependent children. The trial court placed all three children in the temporary custody of CSB. Mother appeals and raises three assignments of error, which will be consolidated for ease of review.
 II. First Assignment of Error "THE TRIAL COURT ERRED IN MAKING A FINDING REGARDING APPELLANT'S KNOWLEDGE."
 Second Assignment of Error "THE TRIAL COURT ERRED IN FINDING THAT IT WAS NOT IN THE MINOR CHILDREN'S BEST [INTERESTS] TO RETURN HOME TO APPELLANT AT THIS TIME."
 Third Assignment of Error "THE TRIAL COURT ERRED IN FINDING THAT CSB [HAD] MADE REASONABLE EFFORTS TO PREVENT THE CONTINUED REMOVAL OF THE MINOR CHILDREN FROM THEIR HOME."
 {¶ 4} Mother's assigned errors will be addressed together because they are closely related. Mother does not challenge the adjudication of the children but instead takes issue with the trial court's disposition that placed the children in the temporary custody of CSB, rather than returning her children to her.[2] The trial court found that Mother had failed to protect A.K., at the age of 12, from the sexual advances of a 19-year-old man and that she even facilitated a sexual relationship between the two. Mother contends that the evidence failed to support such a finding.
 {¶ 5} When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v.Simon (2001), 141 Ohio App.3d 103, 115.
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." Id, citing State v. Thompkins (1997), 78 Ohio St. 3d 380, 387, quoting State v. Martin (1983), 20 Ohio App. 3d 172, 175.
 {¶ 6} A review of the record reveals that there was ample evidence to support the trial court's factual findings. Nathanial Portman, the older man with whom A.K. had a long-term sexual relationship, testified that he first met A.K. during the spring or summer of 2005 at the Natatorium in Cuyahoga Falls. He explained that he was not aware then that A.K. was only 12 years old because A.K., who was well-developed for her age, had told him that she was 17 years old and he believed her. Mother, who was present when Portman met A.K. and heard him tell A.K. that he was 19 years old, also told Portman that A.K. was 17. Portman did not discover until three months later that A.K. was only 12 years old.
 {¶ 7} Mother drove A.K. and Portman to Burger King the night that they met and paid for everyone's food. For the next several months, despite knowing that Portman was seven years older than her daughter, Mother allowed and even encouraged A.K. to have a relationship with him. Shortly after A.K. and Portman met, Mother arranged for Portman to live at the home of Richard Cheatwood, a man with whom she was having an extra-marital affair.
 {¶ 8} For most of that summer, Mother and A.K. would visit Cheatwood's home almost daily and they often spent the night there. Mother also often brought her younger two daughters, C.K. and R.K. Mother and her daughters slept over at Cheatwood's home so often that they kept clothes there. Mother would sleep with Cheatwood in his bedroom; A.K. would sleep with Portman in his bedroom; and C.K. and R.K. would sleep in the living room. Portman testified that Mother knew that A.K. was sleeping with him in his bed at night. Moreover, he further explained that Mother had walked in on them more than once while they were having sex, saw what they were doing, and turned around and left the room without saying anything. Mother continued to bring A.K. with her to Cheatwood's home and also allowed Portman to go to A.K.'s bedroom at their home.
 {¶ 9} CSB also offered the testimony of Cuyahoga Falls police officers, who explained that they had interviewed A.K. and Portman individually and that A.K. corroborated everything that Portman said, including that Mother had walked in on the two having sexual intercourse and walked out of the room without saying anything. According to the officers, Mother denied ever walking in on A.K. and Portman but she did admit knowing that they often slept in the same bed at Cheatwood's home. Therefore, even by her own admission, Mother was regularly allowing her well-developed 12-year-old daughter to sleep in the same bed with a 19-year-old man.
 {¶ 10} The police officers also testified that they were first informed by employees at the Natatorium about potential sexual abuse of A.K. by Portman during December 2005, but Mother would not bring A.K. to talk to the police, so the case was closed. The officers explained that they spoke to Mother about the allegations, but that she had refused to let A.K. talk to them, and she discounted all of the allegations. It was not until February 2006 that the police were finally able to talk to A.K. about allegations of sexual abuse by Portman. After the police learned of another incident involving Portman and one of A.K.'s friends, A.K.'s father, not Mother, allowed her to talk to the police. A.K. admitted that she and Portman had engaged in sexual intercourse at the Natatorium. Rape charges were subsequently filed against Portman and Mother was charged with complicity. Portman later entered a plea of guilty to attempted rape and Mother's criminal case was still pending at the time of adjudication.
 {¶ 11} Although Mother maintains that Portman's testimony was not credible because he was a convicted criminal who had entered into a plea arrangement with the State, the trial judge chose to believe him. The trial judge explicitly remarked at the conclusion of the hearing that she had carefully observed all of the witnesses and their demeanor and that her factual findings were largely based on her determinations of who was telling the truth. It is fundamental that the trier of fact is in the best position to determine the credibility of witnesses and the weight to be given their testimony. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 12} We cannot say that the trial court lost its way in finding that Mother knew about A.K. having a sexual relationship with a much older man, that she did not protect her from it and even encouraged the relationship, and that she exposed her younger children to this environment. The trial court reasonably concluded that these young children should not be returned to Mother's home at this time and placed them in the temporary custody of CSB. The assignments of error are overruled.
 III. {¶ 13} The assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J. MOORE, J. CONCUR
[1] The record suggests that Mother has other children who are not at issue in this case.
[2] Although Mother's third assigned error purports to challenge the efforts of CSB to prevent the continued removal of the children, she does not assert that the agency failed to provide reunification services, but instead contends that she and her home are suitable and that the trial court should have returned the children to her.