[Cite as *Elser v. Johnson*, 2024-Ohio-1745.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| ROBERT ELSER, et al., | CASE NO. 2023-T-0081 |
| Plaintiffs-Appellants, | |
| - vs - | Civil Appeal from the Girard Municipal Court |
| BRUCE W. JOHNSON, | |
| Defendant-Appellee. | Trial Court No. 2022 CVF 00067 |

**O P I N I O N**

Decided: May 6, 2024
Judgment: Affirmed

*Jeffrey A. Kurz*, 42 North Phelps Street, Youngstown, OH 44503 (For Plaintiffs-Appellants).

*Daniel G. Keating*, Keating Law Office, 170 Monroe Street, N.W., Warren, OH 44483 (For Defendant-Appellee).

EUGENE A. LUCCI, P.J.

{¶1} Appellants, Robert Elser, et al. ("Elser"), appeal the judgment of the Girard Municipal Court ruling in favor of appellee, Bruce W. Johnson ("Johnson"), on Elser's complaint for various claims, including, inter alia, breach of contract, fraud, and statutory violations. At issue is whether the weight of the evidence supported the trial court's decision. We affirm.

{¶2} Elser owns a business in the name of Elser, Inc., doing business as Brothers Pizza and Vienna Ale House, located in Vienna Township, Trumbull County, Ohio. In mid-2021, Elser approached Johnson in Elser's restaurant to upgrade electrical

service in the business. The parties agreed the job would be billed on a time-and-materials basis. Elser did not inquire whether Johnson was licensed and bonded in the state of Ohio as an electrician. Instead, Elser admitted he assumed Johnson was licensed and bonded. Johnson denied ever stating or representing he was licensed and bonded in Ohio. And he firmly maintained Elser was aware he lacked these certifications because "from day one [he] told [Elser he] wasn't licensed and bonded."

{¶3} In July 2021, Johnson contacted electrician, Chad Wellman, of CW Electric. Mr. Wellman is licensed and bonded in Ohio, and he obtained an electrical permit for the job on Elser's business premises. After securing the permit, Johnson commenced work on the exterior of the business.

{¶4} Installation of the electrical upgrade required removal of siding from the building in order to affix new panels to the structure. Johnson removed a significant amount of siding to find appropriate studs. Mr. Wellman stated, in his experience, the removal of the amount of siding was not necessary to find the appropriate studs. Johnson, however, explained why he removed so much siding:

> When you put in a commercial service, the gear is very heavy, not hundreds of pounds, thousands. You have to bolt it directly, you don't just screw, you bolt it to [the] structure studs and it has to be so many feet apart and you don't want it to come loose from the building. It is a lot of weight. You can't go over siding. You have to go directly to the structure, which is wood and the studs at the bottom were different from the studs when you got to rafter height. They were different.

{¶5} Johnson stated Elser gave him permission to remove the siding because "he had a siding guy" and, as long as the siding was not damaged, it would be re-hung after Johnson was finished with the exterior electrical work. Elser denied giving Johnson permission to remove the siding, but did concede he told Johnson he had "a siding guy."

2

The siding was later re-installed on the building's exterior. Johnson continued working, and Ohio Edison approved the exterior upgrade.

{¶6} Further work was necessary on the interior of the building. Nevertheless, in October 2021, Elser sent Johnson a message advising him to "I will get someone else, stay out of [his] restaurant." According to Elser, the message merely meant he did not want Johnson in his restaurant as a customer. Johnson, however, interpreted the message to mean Elser wanted him off the job.

{¶7} It is undisputed that Elser paid all invoices for time and materials. Elser eventually hired Mr. Wellman to complete the unfinished work inside the business. Johnson stated he would have charged approximately the same as Mr. Wellman had he been allowed to finish the job.

{¶8} On February 2, 2022, Elser filed a complaint in the Girard Municipal Court, alleging multiple theories of liability related to the electrical upgrade. On July 28, 2023, the matter was tried to the bench. Following trial, both parties submitted proposed findings of fact and conclusions of law. On September 21, 2023, the trial court rendered judgment in Johnson's favor. The court determined:

> The first cause of action alleges a breach of contract. The Court finds that the Defendant completed all of the work that he was hired to perform in a workmanlike manner. There was no credible testimony that the Defendant's work was performed in an unworkmanlike manner. The testimony revealed that the necessary permit for the job was obtained, and that Ohio Edison approved all of the work completed on the outside panels. None of the work was completed in a negligent, willful or tortuous [sic] manner. As such, the Plaintiff's second cause of action also fails. In this count, the Plaintiff alleges unjust enrichment for the willful, wanton, reckless and/or negligent acts of the Defendant. The Court finds no evidence of unjust enrichment.

3

The third count, Fraud, Fraud in the Inducement and Misrepresentation also fail. The Court finds the testimony of the Defendant more credible than that of the Plaintiff. The Defendant procured a permit under the name of a licensed electrician. This process seems to be the standard in the area of electrical work. A non-licensed electrician will often complete work under the permit pulled by a licensed electrician. Any liability would fall on the licensed electrician that pulled the permit. Mr. Wellman, the Plaintiff's witness, testified that he did pull the permits for the outside work and that he knew a third party would be doing the work. The work, which was the outside panel upgrade was approved and passed inspection.

Count four is an allegation of the Consumer Sales Practices Act. This count fails. As used in sections 1345.01 to 1345.13 of the Revised Code:

(A) "Consumer transaction" means a sale, lease, assignment, award by chance or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things.

It is clear that the relationship between the parties was not consumer based. The subject location of the work to be completed and performed is a commercial establishment. Plaintiff argues that the property is titled in the Plaintiff's personal name and is therefore grounds for a consumer action under O.R.C. 1345. However, the location is the building that contains a commercial business. It is undoubtedly a bar and restaurant. All of the payments made to the Defendant are made with corporate checks in the name of Elser, Inc. DBA Brothers Pizza. There is no consumer transaction "for the purposes that are primarily personal, family, or household."

Count Five alleges Conversion. This count fails by the Plaintiff's own testimony. At the meeting of October 25, 2021, he agreed that he paid the Defendant all of the monies that were owed for work due up to that point in time. Defendant did not exercise dominion or control of any property of the Plaintiff with his consent.

Finally, the Plaintiff alleges that the Defendant has civil liability for criminal acts. There was absolutely no testimony or

4

Case No. 2023-T-0081

evidence produced at trial that shows the Defendant committed any criminal acts. Count Six fails.

{¶9} The court determined that Elser failed to meet his burden of proof on any of the counts contained in the complaint. The court accordingly granted judgment in Johnson's favor.

{¶10} This appeal follows. Appellant assigns the following errors for our consideration.

> [1.] Did the trial court err when it found that appellant's had failed to meet their burden of proving that Johnson breached his contract and his duty to perform his work in a workmanlike manner.
>
> [2.] Did the trial court err when it found that Johnson had not been unjustly enriched by retaining the funds for work that was not fully completed and not performed in a workmanlike manner.
>
> [3.] Did the trial court err when it held that Johnson was not liable for fraud, fraud in the inducement, and misrepresentation.
>
> [4.] Did the trial court err when it held that Johnson was not liable for conversion.
>
> [5.] Did the trial court err when it held that Johnson was not liable for civil liability for criminal acts.
>
> [6.] Was the trial court's decision in error against the manifest weight of the evidence [sic.]

{¶11} As the assignments of error collectively challenge the manifest weight of the evidence, we shall address them together.

{¶12} Where a party claims that a trial court's judgment is against the manifest weight of the evidence, "[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such

5

a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶13} "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21.

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 190-192 (1978); *see also Karches v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1998). "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." *State ex rel. Celebrezze v. Environmental Enterprises, Inc.*, 53 Ohio St.3d 147, 154, 559 N.E.2d 1335 (1990). (Resnick, J., concurring in part and dissenting in part.)

{¶14} The trial court's judgment entry acknowledged conflicts in the parties' testimony and expressly concluded that it found Johnson's testimony and his rendition of the evidence more credible than Elser's. The trial court's recitation of its legal conclusions are supported by the testimony and the exhibits. There is consequently competent, credible evidence to support the trial court's findings.

6

Case No. 2023-T-0081

**{¶15}** Moreover, an appellate court should not second-guess the trial court's credibility determinations regarding the parties' relative testimony as the trial court is uniquely situated to make such decisions. It is simply not the role of this court on appeal to override credibility determinations made by a trial court, particularly where there is conflicting evidence. The Eighth Appellate District has observed:

> The trier of fact is in [a] unique position to observe a witness face-to-face. Nonverbal behavior accounts for sixty percent of the total meaning of a transmitted message; another thirty percent of the meaning is gleaned from voice inflection. Only ten percent of the total message results from a witness' choice of words. Rasicot, New Techniques for Winning Jury Trials (1990) 10. A witness' information is, therefore, amazingly judged by focusing primarily on nonverbal communication.

*Broadview Heights v. Abkemeier*, 83 Ohio App.3d 633, 636, 615 N.E.2d 656 (8th Dist.1992).

**{¶16}** Although *Abkemeier* was a criminal matter, the points regarding a trial court's adjudication of witness credibility are equally applicable to civil trials. The trial court, as the arbiter of credibility, was able to closely observe the demeanor of the witnesses, their vocal inflections, as well as the cadence and candor of their testimony. Given these points, and our recognition that we indulge in every reasonable presumption in favor of the trial court's assessment of the evidence, we decline to second-guess the trial court's credibility determinations. We therefore conclude the trial court did not clearly lose its way and create a manifest miscarriage of justice by ruling in Johnson's favor.

7

{¶17} Elser's assignments of error are without merit.

{¶18} For the reasons discussed in this opinion, the judgment of the Girard Municipal Court is affirmed.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2023-T-0081