DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Summit County Children Services Board ("CSB"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied the motion of CSB for permanent custody of the four minor children of appellee, Charles B. ("Father"), and placed the children in a planned permanent living arrangement. This Court affirms.
 {¶ 2} Father is the natural father of the four minor children at issue in this appeal, A.B., born November 10, 1992; J.B., born September 21, 1994; T.B., born September 29, 1996; and C.B., born February 17, 1998. The mother of the children voluntarily relinquished her parental rights and is not a party to this appeal.
 {¶ 3} CSB initially became involved with this family in May of 2003 due to allegations that the parents were failing to meet the basic needs of the children and concerns that both parents were abusing drugs. The children were removed from the home at that time. On July 28, 2003, the children were adjudicated neglected and dependent and were placed in the temporary custody of CSB.
 {¶ 4} One of Father's primary case plan goals was to undergo treatment of his substance abuse problem and to maintain sobriety. Although Father completed drug treatment twice, he relapsed after completing each program. Consequently, Father later entered an intensive nine-month inpatient drug treatment program at New Destiny Treatment Center. Despite Father's ongoing drug problems, his children continued to express a desire to be reunited with him.
 {¶ 5} On June 24, 2004, in response to a motion by the guardian ad litem, the trial court appointed an attorney to represent the children because the expressed desires of the children were in conflict with the recommendation of the guardian ad litem. On October 18, 2004, CSB moved for permanent custody of all four children. On March 2, 2005, the children's attorney moved the trial court to place the children in a planned permanent living arrangement. On March 25, 2005, a hearing on both motions commenced.
 {¶ 6} On April 1, 2005, the trial court denied CSB's motion for permanent custody and ordered that the children be placed in a planned permanent living arrangement. CSB appeals and raises two assignments of error that will be addressed in reverse order because CSB's second assigned error is potentially dispositive.
 SECOND ASSIGNMENT OF ERROR
"THE JUVENILE COURT'S DECISION TO DENY [CSB'S] MOTION FOR PERMANENT CUSTODY OF THE [B.] CHILDREN IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} CSB contends that the trial court erred in denying its motion for permanent custody because that determination was contrary to the weight of the evidence. When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases.Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." Id., citing State v. Thompkins
(1997), 78 Ohio St. 3d 380, 387, quoting State v. Martin (1983),20 Ohio App. 3d 172, 175.
 {¶ 8} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. It is uncontested that the first prong of the test was satisfied because Father's four children had been in the temporary custody of CSB for at least 12 of the prior 22 months. The sole focus at the hearing was on the best interests of the children.
 {¶ 9} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[1]
 {¶ 10} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 11} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 12} A review of the record reveals that CSB failed to present clear and convincing evidence that permanent custody was in the best interests of A.B., J.B., T.B., and C.B. CSB focused most of its evidence at the hearing, and it likewise focuses its argument on appeal, on whether Father had made substantial progress on the requirements of his case plan. As this Court has repeatedly emphasized, however, although case plan compliance may be relevant to the best interest of the children, it is not one of the best interest factors set forth in R.C. 2151.414(D). See, e.g., In re C.M., 9th Dist. No. 21372, 2003-Ohio-5040, at ¶ 10. The trial court's best interest determination must be guided primarily by the mandatory factors.
 {¶ 13} The first best interest factor, which this Court has repeatedly emphasized as "highly significant," "focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved." Id. at ¶ 11, quoting In re Smith, 9th Dist. No. 20711, 2002-Ohio-34. It is apparent from the trial court's decision in this case that the court gave great weight to this factor, and concluded that there are family bonds in this case that should be preserved. The evidence was undisputed at the hearing that these four children have a strong bond with their father, with their foster mother, and with each other. The evidence was also undisputed that if CSB had been granted permanent custody of these children, every one of those bonds would potentially be broken.
 {¶ 14} Permanent custody would obviously sever the family relationship between Father and his four children. The evidence was undisputed, however, that these children love their father and are bonded to him, even though he may not currently be able to care for them. The caseworker and others testified that the children were genuinely happy to see their father when they visited with him and that they greeted him with enthusiasm, hugs, and kisses. Interaction between Father and his children was appropriate and considered to be positive overall. The children had expressed a desire to be reunited with their father.
 {¶ 15} In addition to exploring the children's need to retain a family relationship with their father, there was also evidence before the trial court concerning the children's bond to each other as siblings. At the time of the permanent custody hearing, the children ranged in age from six to twelve years old and all four had lived together for most of their lives. It was undisputed at the hearing that the four children had a strong bond among themselves and that it was in their best interest to remain together as a family unit, even if they could not be reunited with their father. The caseworker testified that it would be detrimental to the children if they were not able to remain together as a sibling group of four.
 {¶ 16} Although it is sometimes asserted at permanent custody hearings that the trial court should not consider the adoptability of the children, that is not a correct understanding of the current statutory scheme. Although the current version of R.C. 2151.414, unlike prior versions, no longer requires the trial court to consider the adoptability of the children or the potential impact of adoption, R.C. 2151.414
certainly does not prohibit the court from considering the potential impact of adoption on the best interests of the children. The CSB caseworker testified that no adoptive parents had yet been identified for these children and indicated that CSB could not guarantee that these children would remain together if placed for adoption. Further, she conceded that, although there was a possibility that CSB could find one family to adopt all four children, she knew of no situation in her experience working for CSB in which one set of parents had adopted four siblings. Consequently, permanent custody would potentially destroy the strong bond among the four siblings.
 {¶ 17} On the other hand, the foster mother had expressed a willingness to keep the children together and care for all four children on a long-term basis. All four children currently reside with the same foster mother who is very dedicated to them and she is bonded to them and they are bonded to her. The foster mother does not want to adopt the children, however, because she is in her 50s and does not want to burden her adult children with the responsibility of raising four children if something were to happen to her.
 {¶ 18} The guardian ad litem testified that the children had all told her that they desired to live with Father. The guardian ad litem did not believe that Father was ready to care for his children but she believed that they had a family relationship that should be maintained. She also testified that that she was "amazed and enthralled with the foster home where the kids are" and opined that the best interests of the children would be served by keeping them in their current foster placement because the foster mother was doing such a wonderful job with them.
 {¶ 19} There was little detailed evidence before the trial court on the custodial history of the children. They had been in CSB temporary custody for a long period of time, but all were currently living together in the same foster home and most of them had been there for almost two years. They had not lived with their father during that entire time, but they remained bonded to him and continued to hope that they would be reunited with him. All four were doing well in the foster home and, as indicated above, the foster mother was willing to continue that environment for the children on a long-term basis.
 {¶ 20} Finally, in considering whether a legally secure permanent placement could be achieved without a grant of permanent custody to CSB, the trial court focused on the evidence that the current foster mother is providing a wonderful home for these children, she is keeping them together as a sibling group, and she is willing to do so until the children are adults. Given that permanent custody could lead to separating the children into different adoptive placements, the trial court reasonably concluded that a PPLA was a more stable long-term placement for these children and that it was a less drastic alternative than permanent custody.
 {¶ 21} As to whether permanent custody was in the best interest of these four children, the trial court concluded that it "does not believe that the evidence, nor the law, compels such a drastic act at this time." Consequently, it denied the motion for permanent custody. This Court cannot say that the trial court lost its way in concluding that permanent custody was not in the best interests of A.B., J.B., T.B., and C.B. The second assignment of error is overruled.
 FIRST ASSIGNMENT OF ERROR
"THE JUVENILE COURT ERRED WHEN IT ORDERED THE [B.] CHILDREN IN A PLANNED PERMANENT LIVING ARRANGEMENT (PPLA) WHEN CSB NEVER REQUESTED THIS DISPOSITION."
 {¶ 22} CSB contends that the trial court lacked authority to place these children in a planned permanent living arrangement ("PPLA"). CSB bases its argument exclusively on the language of R.C. 2151.353(A)(5). R.C. 2151.353(A)(5) provides that, after the trial court adjudicates a child abused, neglected, or dependent, it may issue one of several enumerated dispositional orders. The dispositional options that the court has for such a child at that time include: (1) protective supervision, (2) temporary custody to a relative or qualifying agency or facility, (3) legal custody to either parent or a nonparent, (4) permanent custody to a children services agency, (5) a PPLA, or (6) removal of the child from the home.
 {¶ 23} The provision pertaining to placing the child in a PPLA explicitly provides that the court may place the child in a PPLA "if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement" and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of three statutory criteria set forth in R.C. 2151.353(A)(5) exists.
 {¶ 24} CSB's sole challenge is that the trial court lacked authority to place the children in a PPLA because CSB had not requested such a disposition. CSB does not otherwise dispute the propriety of a PPLA in this case. In other words, CSB does not dispute that, had the trial court had statutory authority to consider placing the children in a PPLA, the evidence supported the trial court's finding that this situation otherwise met the requirements for a PPLA. See R.C. 2151.353(A)(5)(b) and R.C. 2151.415(C)(1).
 {¶ 25} Although the language of R.C. 2151.353(A)(5) suggests that the trial court's authority to consider a PPLA is limited to cases in which the agency makes such a request, R.C. 2151.353(A) must be read in para materia with other sections of R.C. Chapter 2151 so as to give full effect and meaning to all provisions. See Mayfield Hts. FirefightersAssn., Local 1500 v. DeJohn (1993), 87 Ohio App.3d 358, 366; R.C. 1.47.
 {¶ 26} Reading R.C. 2151.353(A) in isolation would give a children services agency more authority and discretion than the juvenile court to determine the appropriate placement of a dependent or neglected child. The overall scheme of the dependency and neglect statutes clearly demonstrates that the juvenile court, which is subject to appellate review, makes the ultimate decision regarding the disposition of each neglected and dependent child, not the children services agency.
 {¶ 27} CSB's argument does not address the broad authority granted to the trial court in R.C. 2151.415(F). That provision authorizes the juvenile court to hold a hearing to consider a change of disposition of a neglected or dependent child upon its own motion or the motion of any party, a person with legal custody of the child, or the guardian ad litem, provided that all parties are given notice of the hearing.
 {¶ 28} R.C. 2151.415(F) grants the trial court very broad authority to determine the appropriate disposition of a child. Specifically, R.C.2151.415(F) provides:
"The court, on its own motion or the motion of the agency or person with legal custody of the child, the child's guardian ad litem, or any other party to the action, may conduct a hearing with notice to all parties to determine whether any order issued pursuant to this section should be modified or terminated or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued. After the hearing and consideration of all the evidence presented, the court, in accordance with the best interest of the child, may modify or terminate any order issued pursuant to this section or issue any dispositional order set forth in divisions (A)(1) to (5) of this section. In rendering a decision under this division, the court shall comply with section 2151.42 [case plan requirements] of the Revised Code."
 {¶ 29} Following a hearing on a motion or motions filed by the agency or another person, or upon its own motion, the court has the discretion, "in accordance with the best interest of the child," to grant one of those specific dispositional requests OR to issue any of the dispositional orders set forth "in divisions (A)(1) to (5) of this section." R.C. 2151.415(A) (1) to (5) include the following dispositional options:
"(1) An order that the child be returned home and [to] the custody of the child's parents, guardian, or custodian without any restrictions;
"(2) An order for protective supervision;
"(3) An order that the child be placed in the legal custody of a relative or other interested individual;
"(4) An order permanently terminating the parental rights of the child's parents; [or]
"(5) An order that the child be placed in a planned permanent living arrangement[.]"
 {¶ 30} R.C. 2151.415(A)(5) does not limit the trial court's discretion to place the child in a PPLA by including a requirement that the children services agency must first request such a disposition. See, also, R.C.2151.415(B). Pursuant to the very broad language of R.C. 2151.415(F), which includes explicit references to the dispositional option of a PPLA, the trial court has authority to consider placing the children in a PPLA upon the motion of the agency, another party, a person with legal custody, the guardian ad litem, or even sua sponte.
 {¶ 31} Given the apparent conflict between the language of R.C.2151.353(A) and R.C. 2151.415(F), this Court must construe them in a manner that will give both provisions effect.
 {¶ 32} R.C. 2151.353(A) has repeatedly been understood to apply to the trial court's initial dispositional order following the filing of a complaint and an adjudication of abuse, dependency, or neglect. See, e.g., In re Burton, 3rd Dist. No. 10-04-01, 2004-Ohio-4021, at ¶ 9; Inre Tiffany B., Maurice L., and Laqualynn B. (June 2, 2000), 6th Dist. No. L-99-1174; In re Dillen (Apr. 6, 1990), 4th Dist. No. 89 CA 13. Such an interpretation is further supported by R.C. 2151.353(B), which provides that no order for PPLA shall be made unless PPLA is requested in the complaint alleging abuse, dependency, or neglect. Under R.C. 2151.353, PPLA is not a dispositional option unless the agency has requested it in the first instance.
 {¶ 33} Thus, R.C. 2151.353(A) would apply where an agency has requested PPLA as the initial disposition following an adjudication of abuse, dependency, or neglect. That was not the situation at issue here. At the time of its initial adjudication that A.B., J.B., T.B., and C.B. were neglected and dependent children in July 2003, the trial court placed them in the temporary custody of CSB. That disposition had, in fact, been extended repeatedly by the trial court.
 {¶ 34} The explicit terms of R.C. 2151.415, on the other hand, govern the trial court's disposition of a child after the child has been placed in the temporary custody of the children services agency pursuant to R.C. 2151.353(A) and that six-month order has expired or is about to expire. See R.C. 2151.415(A). See, also, 2151.415(D), which places explicit limits on how many times and for what reasons the order of temporary custody may be extended.
 {¶ 35} Prior to the expiration of a temporary custody order, R.C.2151.415(A) requires the agency to file a motion requesting one of the enumerated orders (returning the child to his parent's custody with no restrictions; protective supervision; legal custody to a relative or other interested individual; permanent custody to the agency; PPLA; or extension of temporary custody in accordance with division D). In this case, as the children had been in the temporary custody of CSB for almost two years, CSB requested another of the enumerated options, that the children be placed in its permanent custody.
 {¶ 36} Pursuant to R.C. 2151.415(B), upon the filing of a motion pursuant to R.C. 2151.415(A), the trial court was required to hold a hearing on the motion and, "in accordance with the best interest of the child as supported by the evidence presented at the dispositional hearing, * * * issue an order of disposition as set forth in division (A)[.]"
 {¶ 37} Further, R.C. 2151.415(F) authorized the attorney for children, as a representative of parties to the action, to file a motion with the court "to determine whether any order issued pursuant to this section should be modified * * * or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued." The children filed a motion that requested a different dispositional alternative; they moved the trial court to place them in a PPLA.
 {¶ 38} Consequently, pursuant to R.C. 2151.415(B) and R.C. 2151.415(F), the trial court held a hearing on the change of disposition, and specifically focused on the two options put before it by motion. Because this was not a hearing on the initial dispositional order following the adjudication of dependency, but instead was a hearing on a modification of disposition following the expiration of a temporary custody order, the trial court's dispositional authority was governed by R.C. 2151.415, not R.C. 2151.353. Consequently, any language in R.C. 2151.353(A) that appears to limit the trial court's authority to consider the dispositional option of a PPLA was inapplicable here.[2] Pursuant to R.C. 2151.415(B) and R.C. 2151.415(F), the trial court had the discretion to choose any of the dispositional alternatives set forth in R.C. 2151.415(A) (1) through (5), provided that the evidence presented at the hearing demonstrated that such a disposition was in the best interest of the children.
 {¶ 39} Other appellate districts that have held that the juvenile court has authority to consider the dispositional option of a PPLA even when the agency has not requested it, particularly when the agency has filed a motion for permanent custody. See, e.g., In re Moody (June 28, 2001), 4th Dist. Nos. 01CA11 and 01CA14; In re Lane (Feb. 9, 2001), 2nd Dist. No. 18467. Although this Court recognizes that there is authority to the contrary, see, e.g., In re M.W., 8th Dist. 83390, 2005-Ohio-1302, the reasoning is not persuasive as it focuses solely on R.C. 2151.353(A)(5) and ignores the overall legislative scheme and the explicit language of R.C. 2151.415(F) and R.C. 2151.415(B).
 {¶ 40} When the trial court considers a motion to change a prior order of temporary custody that has expired or is about to expire, R.C.2151.415(F) does not limit the trial court to the dispositional options that the children services agency and/or parent have chosen to put before it by motion. If the trial court's discretion were so constrained, in many instances the court would be forced to choose between permanently dissolving a family and returning legal custody to the parent, when neither option may be in the child's best interest. The juvenile court cannot have its hands tied in this manner by the parties but must have the option of selecting a middle ground, when appropriate. To hold otherwise would defeat the plain language of R.C. 2151.415(F) and would be contrary to the stated purpose of R.C. Chapter 2151 to "provide for the care, protection, and mental and physical development of children * * *, whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A).
 {¶ 41} In this case, CSB had filed a motion for permanent custody and the children's attorney filed a motion for PPLA. A hearing was held on both motions following notice to all parties. Through the disposition of CSB's second assignment of error, this Court determined that the trial court's decision to deny CSB's motion for permanent custody was not against the weight of the evidence. The trial court necessarily chose another dispositional order for the children. The trial court acted within its explicit authority under R.C. 2151.415(F) when it considered the dispositional option of PPLA. The first assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J. concurs
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.
[2] This Court recognizes that the trial court's discretion to place these children in a PPLA was limited by the requirements set forth in R.C. 2151.415(C)(1). Because CSB raised no arguments on these additional statutory requirements, however, they are not addressed.