**In re A.S.**

[Cite as *In re A.S.,* 163 Ohio App.3d 647, 2005-Ohio-5309.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 22573.

Decided Oct. 5, 2005.

648

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Philip D. Bogdanoff, Assistant Prosecuting Attorney, for appellant.

Thomas C. Loepp, for appellee, Rose S.

MOORE, Judge.

{¶ 1} Appellant, Summit County Children Services Board ("CSB"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied its motion for permanent custody of the minor child of appellee, Rose S., and ordered that the child be placed in a planned permanent living arrangement ("PPLA"). This court affirms.

{¶ 2} Rose S. is the natural mother of A.S., born May 11, 2000. On June 13, 2003, Rose called the police asking for assistance because she was in fear for her

safety.    When the police arrived, they discovered that Rose's fears were not based on reality and that she had armed herself with concealed weapons that included a loaded handgun, a penknife, and a box cutter.   Rose was arrested, and A.S. was taken into CSB custody pursuant to Juv.R. 6.   Several months later, additional criminal charges against Rose arose, and during the prosecution of the new charges, Rose was found incompetent to stand trial.   After her competency was restored through mental-health treatment, she was found not guilty by reason of insanity.

{¶ 3} Rose, who had been an employed and productive adult for many years, and who had no known history of mental-health problems, had apparently had a mental breakdown at some point during the young life of A.S. Rose entered a psychiatric hospital for treatment.   She was diagnosed with psychotic disorder, not otherwise specified, and her treatment included counseling and antipsychotic medication.

{¶ 4} A.S. was adjudicated a dependent child and was placed in the temporary custody of CSB.   Temporary custody was extended for one six-month period. Prior to the expiration of that six-month extension, CSB moved for permanent custody of A.S.   Following a hearing on the motion, the trial court denied CSB's motion for permanent custody and ordered that A.S. be placed in a planned permanent living arrangement.[1]   CSB appeals and raises two assignments of error that will be addressed in reverse order because CSB's second assigned error is potentially dispositive.

## SECOND ASSIGNMENT OF ERROR

The juvenile court's decision to deny [CSB's] motion for permanent custody of [A.S.] is contrary to the manifest weight of the evidence.

{¶ 5} CSB contends that the trial court erred in denying its motion for permanent custody because that determination was contrary to the weight of the evidence.   When reviewing the weight of the evidence, this court applies the same test in civil cases as it does in criminal cases.   *Tewarson v. Simon* (2001), 141 Ohio App.3d 103, 115, 750 N.E.2d 176.   " 'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' "   (Alterations sic.)   Id.,

---

1.   Although the trial court judgment refers to a pending motion by Rose for another six-month extension of temporary custody, this court was not able to find such a motion, either written or oral, in the record.

citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 6} Before a juvenile court can terminate parental rights and award permanent custody of a child to an agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E), and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, *In re William S.* (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738. It is uncontested that the first prong of the test was satisfied because A.S. had been in the temporary custody of CSB for more than 12 of the prior 22 months. The sole focus at the hearing was on the best interest of A.S.

{¶ 7} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. R.C. 2151.414(D)(1) through (4) [2].

{¶ 8} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." See *In re Smith* (Jan. 2, 2002), 9th Dist. No. 20711, 2002 WL 5178; see, also, *In re Palladino*, 11th Dist. No. 2002–G–2445, 2002-Ohio-5606, 2002 WL 31356652, ¶ 24.

{¶ 9} The best-interest prong of the permanent-custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will

---

2. The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.

produce in the trier of fact " 'a firm belief or conviction as to the facts sought to be established.' " *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 18 OBR 419, 481 N.E.2d 613, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 10} A review of the record reveals that CSB failed to present clear and convincing evidence that permanent custody was in the best interest of A.S. No one disputed that Rose had a mental illness that required ongoing treatment and that she was not able to care for A.S. and would not be able to do so anytime in the near future. Despite that fact, A.S. remained bonded to Rose, and their visitation has "always been very positive," according to the caseworker.

{¶ 11} The foster mother testified that Rose undoubtedly loves A.S. and that A.S. loves Rose. She further testified that A.S. loves to visit with Rose and was always excited about the visits and that Rose always engaged in age-appropriate activities with A.S. The guardian ad litem also testified that he had no doubt that there was a bond between Rose and A.S. and that the interaction that he had observed between Rose and A.S. was always appropriate.

{¶ 12} A.S. had lived with the same foster family since August 2003. She was very comfortable in that home and had become integrated into the family. The caseworker testified that the home was appropriate and that the interaction between A.S. and the foster family was good.

{¶ 13} A.S. expressed her wishes to both her therapist and her foster mother. A.S. told them both that she liked living with the foster family and that she wanted to stay there. She told the foster mother, however, that she also wanted to continue visiting Rose. A.S. had also told her therapist that she enjoyed visits with Rose.

{¶ 14} The guardian ad litem opined that permanent custody was in the best interest of A.S. because there was too much uncertainty for her in foster care and she needed a permanent placement. The guardian ad litem elaborated that it was his understanding that permanent custody was the only permanent placement available to the court because the court could not place A.S. in a PPLA if CSB had not requested such a placement.

{¶ 15} There is little detail in the record regarding A.S.'s custodial history. She had lived with Rose for the first three years of her life and there had been no prior involvement with CSB. According to Rose's psychiatrist, the first symptoms of Rose's mental illness did not appear until she was 38 years old. Prior to that time, Rose had been a productive adult and had been employed for many years as a hospital worker. A.S. was removed from Rose's home when the police and CSB became aware of Rose's irrational behavior.

{¶ 16} At the time of the hearing, A.S. had been living in foster care for more than 12 of the past 22 months. CSB emphasized that, during that time, Rose had made little progress toward the goals of her case plan. It was undisputed, however, that Rose had spent much of the time in Summit County jail and then in a psychiatric hospital and that she had limited ability to comply with her case plan requirements at either facility. Rose had been focusing on treating her mental illness, which was the primary problem that prevented her from caring for A.S. According to her treating psychiatrist, other than an initial reluctance to take antipsychotic drugs, Rose had been compliant with her psychiatric treatment and the symptoms of her mental illness had diminished significantly.

{¶ 17} Since beginning psychiatric treatment, which included counseling and antipsychotic medication, Rose had made significant progress with her treatment. Her treating psychiatrist opined that, if Rose's steady progress continued, she would probably be released to a group home in about two or three months. After her release to a group home, it probably would be several more months before Rose could live independently.

{¶ 18} Rose was unable to provide a permanent placement for A.S. at the time of the hearing or anytime in the near future. CSB had attempted to place A.S. with a relative, but all of the relatives who had initially expressed a willingness to take A.S. into their homes had later indicated that they were not able to do so.

{¶ 19} The foster family who was caring for A.S. had expressed a desire to care for her on a long-term basis and would like to adopt her. In the opinion of CSB and other CSB witnesses, adoption was the best option for A.S., as it would give her permanency in her life. Because adoption would be possible only if Rose's parental rights were terminated, CSB advocated terminating Rose's parental rights.

{¶ 20} Although CSB apparently believed that permanent custody was the best way to achieve a legally secure permanent placement for A.S., the trial court disagreed that such a disposition was in the best interest of A.S. As the trial court emphasized, if it granted CSB permanent custody, it would have no authority to dictate who would adopt A.S. or what the terms of the adoption would be. Although the foster mother had indicated that she would like to adopt A.S. and that she would continue to facilitate visitation between A.S. and Rose, the trial court would have no ability to control whether such a result would be achieved.

{¶ 21} CSB witnesses repeatedly emphasized that permanent custody was necessary because A.S. needed permanency in her life, overlooking the possibility of other permanent placements that would be less drastic, such as legal custody to a nonparent or a PPLA. In this case, it was not disputed that there were no relatives or friends available to take legal custody of A.S. On the other hand,

evidence was introduced regarding a PPLA placement for A.S. The caseworker testified that a PPLA is a permanent placement of the child in a foster home until she graduates from high school, but that CSB had not requested a PPLA in this case because A.S. is young.

{¶ 22} The trial court explored the alternative of placing A.S. in a PPLA. In this case, it would achieve the result that everyone was advocating: a permanent placement with the current foster family. Moreover, in its best-interest analysis, the trial court was statutorily required to consider whether a legally secure permanent placement could be achieved *"without* a grant of permanent custody to the agency." (Emphasis added.) R.C. 2151.414(D)(4).

{¶ 23} The trial court reasonably concluded that there was a less drastic permanent placement that would ensure that A.S. stayed with the foster family and also that she would continue to have visits with Rose, provided that visitation continued to be appropriate. The foster mother testified that she was willing to consider a PPLA placement with A.S. rather than adoption. Rose, who recognized that she was mentally ill and unable to care for A.S., testified that she got along with the foster mother and that she would like A.S. to be placed in a PPLA.

{¶ 24} Given the evidence before the trial court on each of the mandatory best-interest factors, the trial court did not lose its way in concluding that permanent custody was not in the best interest of A.S. The second assignment of error is overruled.

## FIRST ASSIGNMENT OF ERROR

The juvenile court erred when it *sua sponte* ordered [A.S.] in a planned permanent living arrangement (PPLA) when CSB never requested this disposition.

{¶ 25} CSB contends that the trial court lacked authority to place A.S. in a PPLA. CSB bases its argument exclusively on the language of R.C. 2151.353(A)(5). R.C. 2151.353(A) provides that after the trial court adjudicates a child abused, neglected, or dependent, it may issue one of several enumerated dispositional orders. The dispositional options that the court has for such a child at that time include: (1) protective supervision, (2) temporary custody to a relative or qualifying agency or facility, (3) legal custody to either parent or a nonparent, (4) permanent custody to a children services agency, (5) a PPLA, or (6) removal of the child from the home. R.C. 2151.353(A)(1) through (6).

{¶ 26} The provision pertaining to placing the child in a PPLA explicitly provides that the court may place the child in a PPLA "if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement" and if the court finds, by clear

and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of three statutory criteria set forth in R.C. 2151.353(A)(5) exists.

{¶ 27} CSB's sole challenge is that the trial court lacked authority to place A.S. in a PPLA because CSB had not requested such a disposition. CSB does not otherwise dispute the propriety of a PPLA in this case. CSB does not raise a due-process challenge, nor does it dispute that, had the trial court acted with statutory authority to consider placing the child in a PPLA, the evidence supported the trial court's finding that this situation otherwise met the requirements for a PPLA. See R.C. 2151.353(A)(5)(b) and R.C. 2151.415(C)(1).

{¶ 28} This court recently rejected this same argument by CSB in *In re A.B.*, 9th Dist. No. 22659, 2005-Ohio-4936, 2005 WL 2291869, at ¶ 22–41. The analysis set forth in that case applies with full force here, and this court repeats it almost verbatim below.

{¶ 29} Although the language of R.C. 2151.353(A)(5) suggests that the trial court's authority to consider a PPLA is limited to cases in which the agency makes such a request, R.C. 2151.353(A) must be read in para materia with other sections of R.C. Chapter 2151 so as to give full effect and meaning to all provisions. See *Mayfield Hts. Fire Fighters Assn., Local 1500 v. DeJohn* (1993), 87 Ohio App.3d 358, 366, 622 N.E.2d 380; R.C. 1.47.

{¶ 30} Reading R.C. 2151.353(A) in isolation would give a children-services agency more authority and discretion than the juvenile court to determine the appropriate placement of a dependent or neglected child. The overall scheme of the dependency and neglect statutes clearly demonstrates that the juvenile court, which is subject to appellate review, makes the ultimate decision regarding the disposition of each neglected and dependent child, not the children-services agency.

{¶ 31} CSB's argument does not address the broad authority granted to the trial court in R.C. 2151.415(F). That provision authorizes the juvenile court to hold a hearing to consider a change of disposition of a neglected or dependent child upon its own motion or the motion of any party, a person with legal custody of the child, or the guardian ad litem, provided that all parties are given notice of the hearing.

{¶ 32} R.C. 2151.415(F) grants the trial court very broad authority to determine the appropriate disposition of a child. Specifically, R.C. 2151.415(F) provides:

The court, on its own motion or the motion of the agency or person with legal custody of the child, the child's guardian ad litem, or any other party to the action, may conduct a hearing with notice to all parties to determine whether

any order issued pursuant to this section should be modified or terminated or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued. After the hearing and consideration of all the evidence presented, the court, in accordance with the best interest of the child, may modify or terminate any order issued pursuant to this section or issue any dispositional order set forth in divisions (A)(1) to (5) of this section. In rendering a decision under this division, the court shall comply with section 2151.42 [case-plan requirements] of the Revised Code.

{¶ 33} Following a hearing on a motion or motions filed by the agency or another person, or upon its own motion, the court has the discretion, "in accordance with the best interest of the child," to grant one of those specific dispositional requests *or* to issue any of the dispositional orders set forth "in divisions (A)(1) to (5) of this section." R.C. 2151.415(A)(1) to (5) include the following dispositional options:

(1) An order that the child be returned home and [to] the custody of the child's parents, guardian, or custodian without any restrictions;

(2) An order for protective supervision;

(3) An order that the child be placed in the legal custody of a relative or other interested individual;

(4) An order permanently terminating the parental rights of the child's parents; [or]

(5) An order that the child be placed in a planned permanent living arrangement * * *.

{¶ 34} R.C. 2151.415(A)(5) does not limit the trial court's discretion to place the child in a PPLA by including a requirement that the children-services agency must first request such a disposition. See, also, R.C. 2151.415(B). Pursuant to the very broad language of R.C. 2151.415(F), which includes explicit references to the dispositional option of a PPLA, the trial court has authority to consider placing a child in a PPLA upon the motion of the agency, another party, a person with legal custody, the guardian ad litem, or even sua sponte, provided that a hearing is held on the proposed change of disposition after notice to all parties.

{¶ 35} Given the apparent conflict between the language of R.C. 2151.353(A) and 2151.415(F), this court must construe them in a manner that will give both provisions effect.

{¶ 36} R.C. 2151.353(A) has repeatedly been understood to apply to the trial court's initial dispositional order following the filing of a complaint and an adjudication of abuse, dependency, or neglect. See, e.g., *In re Burton,* 3d Dist. No. 10–04–01, 2004-Ohio-4021, 2004 WL 1718166, at ¶ 9; *In re Tiffany B.* (June 2, 2000), 6th Dist. No. L–99–1174, 2000 WL 706832; *In re Dillen* (Apr. 6, 1990), 4th

Dist. No. 89 CA 13, 1990 WL 42303. That interpretation is further supported by R.C. 2151.353(B), which provides that no order for PPLA shall be made unless PPLA is requested in the complaint alleging abuse, dependency, or neglect. Under R.C. 2151.353, PPLA is not a dispositional option unless the agency has requested it in the first instance.

{¶ 37} Thus, R.C. 2151.353(A) would apply where an agency has requested PPLA as the initial disposition following an adjudication of abuse, dependency, or neglect. That was not the situation at issue here. Shortly after its adjudication that A.S. was a dependent child in July 2003, the trial court placed her in the temporary custody of CSB. The trial court later extended that disposition for one six-month period.

{¶ 38} The explicit terms of R.C. 2151.415, on the other hand, govern the trial court's disposition of a child after the child has been placed in the temporary custody of the children-services agency pursuant to R.C. 2151.353(A) and that order has expired or is about to expire. See R.C. 2151.415(A). See, also, 2151.415(D), which places explicit limits on how many times and for what reasons the order of temporary custody may be extended.

{¶ 39} Prior to the expiration of a temporary-custody order, R.C. 2151.415(A) requires the agency to file a motion requesting one of the enumerated orders (returning the child to his parent's custody with no restrictions, protective supervision, legal custody to a relative or other interested individual, permanent custody to the agency, PPLA, or extension of temporary custody in accordance with division (D)). In this case, CSB requested that the children be placed in its permanent custody.

{¶ 40} Pursuant to R.C. 2151.415(B), upon the filing of a motion pursuant to R.C. 2151.415(A), the trial court was required to hold a hearing on the motion and, "in accordance with the best interest of the child as supported by the evidence presented at the dispositional hearing, * * * issue an order of disposition as set forth in division (A)."

{¶ 41} As quoted above, R.C. 2151.415(F) further required that the trial court hold a hearing on CSB's motion and "in accordance with the best interest of the child," gave the court the discretion to determine whether the prior disposition of temporary custody should be modified or whether any of the dispositions in R.C. 2151.415(A), which included a PPLA, should be issued.

{¶ 42} Consequently, pursuant to R.C. 2151.415(B) and 2151.415(F), the trial court held a hearing on the change of disposition. Because this was not a hearing on the initial dispositional order following the adjudication of dependency, but instead was a hearing on the modification of a temporary-custody order after the first six-month extension, the trial court's dispositional authority was gov-

erned by R.C. 2151.415, not 2151.353. Consequently, any language in R.C. 2151.353(A) that appears to limit the trial court's authority to consider the dispositional option of a PPLA was inapplicable here.[3] Pursuant to R.C. 2151.415(B) and 2151.415(F), the trial court had the discretion to choose any of the dispositional alternatives set forth in R.C. 2151.415(A)(1) through (5), provided that the evidence presented at the hearing demonstrated that such a disposition was in the best interest of the child.

{¶ 43} Other appellate districts that have held that the juvenile court has authority to consider the dispositional option of a PPLA even when the agency has not requested it, particularly when the agency has filed a motion for permanent custody. See, e.g., *In re Moody* (June 28, 2001), 4th Dist. Nos. 01CA11 and 01CA14, 2001 WL 772229; *In re Lane* (Feb. 9, 2001), 2d Dist. No. 18467, 2001 WL 109154. Although this court recognizes that there is authority to the contrary, see, e.g., *In re M.W.*, 8th Dist. 83390, 2005-Ohio-1302, 2005 WL 678111, the reasoning is not persuasive as it focuses solely on R.C. 2151.353(A)(5) and ignores the overall legislative scheme and the explicit language of R.C. 2151.415(F) and 2151.415(B).

{¶ 44} When the trial court considers a motion to change a prior order of temporary custody that has expired or is about to expire, R.C. 2151.415(F) does not limit the trial court to the dispositional options that the children-services agency and/or parent have chosen to put before it by motion. If the trial court's discretion were so constrained, in many instances the court would be forced to choose between permanently dissolving a family and returning legal custody to the parent, when neither option may be in the child's best interest.

{¶ 45} The juvenile court cannot have its hands tied by the parties but must have the option of selecting a middle ground, when appropriate. To hold otherwise would defeat the plain language of R.C. 2151.415(F) and would be contrary to the stated purpose of R.C. Chapter 2151 to "provide for the care, protection, and mental and physical development of children * * *, whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A).

{¶ 46} In this case, CSB had filed a motion for permanent custody and, following a hearing, the trial court determined that permanent custody was not in the best interest of A.S. Through the disposition of CSB's second assignment of

---

3. This court recognizes that the trial court's discretion to place the child in a PPLA was not unlimited. There are statutory requirements for a PPLA set forth in R.C. 2151.415(C)(1) and the parties were also entitled to due process. This court does not address these additional legal arguments, however, because CSB has not raised them.

error, this court concluded that the trial court's decision to deny CSB's motion for permanent custody was not against the weight of the evidence. The trial court necessarily chose another dispositional order for A.S. The trial court reasonably concluded that it was not appropriate to return the child to Rose or to grant another six-month extension of temporary custody, because Rose would still be unable to care for A.S. at the end of six months and A.S. was in need of a permanent placement. The trial court acted within its explicit authority under R.C. 2151.415(F) when it considered the dispositional option of PPLA. The first assignment of error is overruled.

Judgment affirmed.

CARR, J., concurs.

WHITMORE, P.J., dissents.

WHITMORE, P.J., dissenting.

{¶ 47} I respectfully dissent from the decision of the majority for the same reasons that I articulated in *In re A.B.*, 9th Dist. No. 22659, 2005-Ohio-4936, 2005 WL 2291869, at ¶ 42–43. The language of R.C. 2151.353(A)(5) is unambiguous and does not authorize the trial court to consider a PPLA placement unless the children-services agency has filed a motion requesting such a disposition.

{¶ 48} Because the trial court's improper consideration of a PPLA placement clearly tainted its ruling on CSB's motion for permanent custody, I would remand the matter for a new hearing on that motion.