[Cite as *In re C.A.*, 2012-Ohio-533.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: C.A.

C.A. No.     11CA0051

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     09-0475-AND

DECISION AND JOURNAL ENTRY

Dated: February 13, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}   The trial court granted permanent custody of two-year-old C.A. to the Wayne County Children Services Board.  The child had tested positive for cocaine at the time of her birth, resulting in intervention by the children services agency.  Before the permanent custody hearing, C.A.'s mother voluntarily surrendered her parental rights, but her father initially pursued custody, later sought a planned permanent legal arrangement, has appealed from the judgment terminating his parental rights, and has argued that the evidence did not support a finding that permanent custody was in the best interest of the child and that the trial court should have placed the child in a planned permanent living arrangement instead.  This Court affirms the judgment of the trial court because we conclude that the evidence supports the judgment of permanent custody and that the trial court did not err in failing to place the child in a planned permanent legal arrangement.

## BACKGROUND

**{¶2}** At the time of C.A.'s birth on May 24, 2009, her mother, Kristin G., was using illegal drugs and her putative father, Chanson A., was incarcerated on a drug offense. Because C.A. tested positive for cocaine at birth, hospital personnel contacted the Wayne County Children Services Board. The agency obtained emergency temporary custody of the child and placed her with her maternal grandparents. In due course, C.A. was adjudicated abused and dependent and she was placed in the temporary custody of the agency. Paternity was established in Chanson A., and case plans were created for both parents. The mother's case plan addressed substance abuse, housing, employment, parenting skills, and coping skills. The father's case plan addressed substance abuse, housing, employment, mental health, and compliance with probation requirements.

**{¶3}** On October 8, 2010, the agency moved for permanent custody. Before the motion was heard, the mother surrendered her parental rights. The child's father continued to contest the motion, and urged the trial court to place C.A. in a planned permanent living arrangement so that he could retain his residual parental rights and legally protect his right to visit with his child. Following the hearing, the trial court granted the agency's motion for permanent custody. The father has appealed and has assigned three errors for review.

## BEST INTEREST OF THE CHILD

**{¶4}** Through his first two assignments of error, the child's father has asserted that the evidence fails to support the trial court judgment granting permanent custody of C.A. to the Wayne County Children Services Board. Before a trial court may terminate parental rights, it must find clear and convincing evidence on both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12

months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Section 2151.41.4(E) of the Ohio Revised Code; and (2) that a grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.41.4(D) of the Ohio Revised Code. *See* R.C. 2151.41.4(B)(1) and (2); *see also In re William S.*, 75 Ohio St. 3d 95, 99 (1996).

{¶5}   The trial court found that the first prong of the permanent custody test was satisfied because the child had been in the temporary custody of the agency for at least 12 of 22 consecutive months. *See* R.C. 2151.41.4(B)(1)(d).  The father does not dispute satisfaction of the first prong of the test.  Thus, the only question is the finding regarding C.A.'s best interest. When determining whether a grant of permanent custody is in a child's best interest, a juvenile court must consider all the relevant factors, including those enumerated in Section 2151.41.4(D)(1):  the interaction and interrelationships of the child, the wishes of the child, the child's custodial history, and the child's need for permanence in her life. *See In re S.N.*, 9th Dist. No. 23571, 2007-Ohio-2196, at ¶ 27.

{¶6}   By all accounts, the father interacted well with his daughter during visits.  He played with her, fed her, diapered her, and generally met her needs.  At the same time, the guardian ad litem did not believe the two were bonded.  Caseworker Stacey Chuhi pointed out that the father was not consistent in his attendance, missing 45 of 114 total scheduled visits and 14 of the last 19.  Ms. Chuhi expressed concern with the father's failure to demonstrate stable housing and employment and with his criminal history, which included convictions for possession of drugs and drug paraphernalia in July 2006, three counts of cocaine trafficking in March 2009, and a misdemeanor assault in March 2010, the last of which occurred while this

case was in progress. The father worked on the substance abuse part of his case planning objectives, but relapsed in the midst of these proceedings by using cocaine in December 2009, resulting in a probation violation. The caseworker did not believe the father demonstrated an ability to provide his daughter a stable environment.

{¶7} Dr. Marianne Bowden conducted a psychological assessment of the father. She found him to be of average intelligence, to have appropriate parenting skills, and to be friendly and sociable. She indicated that he had no mental health diagnosis and did not pose a risk of abuse or neglect to the child, but that he had some personality characteristics that could have a negative effect on his parenting ability. Dr. Bowden explained that the father had a tendency to show contempt for social norms, could be unreliable and untrustworthy, and was disinclined to persevere in routine tasks. She was mostly concerned, therefore, with his ability to be consistent over time in parenting a child and with his history of anti-social behaviors. Dr. Bowden recommended that C.A. should not be permanently placed with the father.

{¶8} According to the caseworker, the father initially wanted full custody of his daughter, but had come to realize that he could not raise C.A. by himself and that the maternal grandparents could better provide for her needs. He nevertheless did not want to surrender his parental rights because that could result in an inability to visit his daughter. Therefore, he opposed the motion for permanent custody and urged the court to place C.A. in a planned permanent living arrangement.

{¶9} According to Caseworker Chuhi and the guardian ad litem, C.A. was comfortable living with her maternal grandparents and they share an affectionate and loving relationship. The maternal grandparents also provide care for two other children of C.A.'s mother, which permits C.A. to maintain a relationship with her half-siblings.

{¶10} The maternal grandmother testified at the hearing and stated that she believes the father loves C.A. and interacts well with her. She explained that she and her husband have included the father and his extended family in holiday celebrations and that they intend to "strongly encourage" the father and child to maintain their relationship in the future. Dr. Bowden and both caseworkers expressed support for that effort. The grandmother also facilitated a continuing, but guarded, relationship between the child and her mother who was attempting to overcome a substance abuse problem. The grandparents expressed a desire to adopt C.A. if permanent custody is granted.

{¶11} At two years of age, C.A. is too young to form an opinion of where she would like to live. Therefore, on her behalf, the guardian ad litem recommended granting permanent custody to the agency as the only way to achieve the permanency and stability the child deserves.

{¶12} C.A.'s custodial history is that she has resided with her maternal grandparents since two days after her birth. As stated above, the guardian ad litem testified that C.A. is comfortable living with her grandparents and that it is a stable and loving home. Caseworker Chuhi testified similarly.

{¶13} The final best interest factor concerns the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. *See* R.C. 2151.41.4(D)(1)(d). There was evidence before the trial court that C.A. needed a permanent home. The maternal grandparents were not interested in pursuing legal custody, but preferred to seek to adopt C.A. if permanent custody is granted to the agency. While the father acknowledged that the grandparents provided very good care for C.A., he wished to legally protect his right to continue to visit with his daughter through her placement in a planned permanent living arrangement. Accordingly, this best interest factor is related to the

father's third assignment of error in which he has claimed that the trial court erred in failing to place the child in a planned permanent living arrangement, "a placement that gives legal custody to an agency without terminating parental rights and that allows the agency to make an appropriate placement, including foster care or other placement." *In re A.B.,* 110 Ohio St. 3d 230, 2006–Ohio–4359, ¶ 24.

## PLANNED PERMANENT LIVING ARRANGEMENT

{¶14} Section 2151.35.3(A)(5) of the Ohio Revised Code provides that a juvenile court can order a planned permanent living arrangement if a proper agency makes such a request, the court finds that such a placement is in the child's best interest, and one of the factors in subsections (A)(5)(a)-(c) exists. R.C. 2151.35.3(A)(5). After CSB rested its case, the father moved the trial court to place his daughter in a planned permanent living arrangement. The children services agency declined to make such a request on its own behalf because the child was so young, would be in limbo for years, and the agency believed it would not be in her best interest. The Ohio Supreme Court has specifically held that a trial court lacks authority to place a child in a planned permanent living arrangement if an agency with temporary custody moves for permanent custody, but does not request a planned permanent living arrangement. *See In re A.B.,* 110 Ohio St. 3d 230, 2006–Ohio–4359, syllabus.

{¶15} The father acknowledges this decision of the Ohio Supreme Court, but nevertheless asks this Court to find error in the failure of the trial court to order such a disposition. The father has first cited two opinions that lack precedential value upon the question before us. *See In re A.B.* 9th Dist. No. 22659, 2005-Ohio-4936, *overruled by* 110 Ohio St. 3d 230, 2006–Ohio–4359; *In re A.B.*, 110 Ohio St. 3d 230, 2006–Ohio–4359, ¶ 38-46 (Pfeifer, J., dissenting).

{¶16}  Second, the father has urged this Court to rely on Section 2151.41.5(F), which he believes to be supportive of his position because it refers to the trial court's ability to make some dispositional orders "on its own motion" as opposed to relying on Section 2151.35.3, which explicitly requires an agency motion for a planned permanent living arrangement.  R.C. 2151.41.5(F).  In *In re A.B.*, the Ohio Supreme Court fully considered the interplay of Section 2151.35.3 and Section 2151.41.5.  In reaching its decision, the court emphasized its judicial obligation to give meaning and effect to the plain language of statutes and acknowledged the legislature's intent to encourage the speedy placement of children into permanent homes.  *In re A.B.,* 110 Ohio St. 3d 230, 2006–Ohio–4359, ¶ 33, 35.  The court observed that "a planned permanent living arrangement places a child in limbo, which can delay placement in a permanent home."  *Id.* at ¶ 33.  The court ultimately concluded that Section 2151.35.3 is "unambiguous" in signifying that a trial court is not authorized to consider a planned permanent living arrangement unless the agency has filed a motion requesting such a disposition.  *Id.* at ¶ 37.  The father has not distinguished the present case from the decision of the Ohio Supreme Court.  Accordingly, the Supreme Court's holding is binding on the trial court as well as this Court.  *In re Schott*, 16 Ohio App. 2d 72, 75 (1st Dist.1968).

{¶17}  Moreover, even had the agency filed a motion for a planned permanent living arrangement, before such a placement would be appropriate, the trial court would also be obligated to determine whether such a disposition is in the best interest of the child and whether any of the three factors in Section 2151.35.3(A)(5) exist.  *See* R.C. 2151.35.3(A)(5).  In his judgment entry, the trial judge conducted a best-interest analysis and concluded that it would not be in the child's best interest to be placed in a planned permanent living arrangement.  The trial judge found that, during the last two years, the father had largely been an "absent parent" to his

daughter. During that time, he did not prepare to be a full-time parent or to offer his daughter a stable home. The trial judge found that to enter an order for a planned permanent living arrangement would "continue uncertainty in the life of the child." *See In re A.B.*, 110 Ohio St. 3d 230, 2006–Ohio–4359, at ¶ 33.

**{¶18}** In addition, the trial court found that none of the conditions listed in Section 2151.35.3(A)(5)(a)-(c) exist in this case. Those conditions are: (1) the child is unable to function in a family-like setting because of physical, mental, or psychological problems; (2) the parents have significant physical, mental, or psychological problems, making them unable to care for the child; or (3) the child is sixteen years of age and unwilling or unable to accept a permanent placement. R.C. 2151.353(A)(5)(a)-(c). The record supports the finding of the trial court.

**{¶19}** This Court concludes that the evidence before the trial court amply supports the judgment that permanent custody is in the best interest of the child and, furthermore, that the trial court did not err in failing to place the child in a planned permanent living arrangement. Accordingly, the father's assignments of error are overruled.

**{¶20}** In addition, the father has requested a continuance to brief the question of the constitutionality of Section 2151.35.3(A)(5). That issue was not preserved below and is, therefore, forfeited on appeal. The motion is denied. The father has also requested that the Court take judicial notice that Section 2151.35.3(A)(5) violates Ohio's Separation of Powers Doctrine and, as such, the trial court's reliance on it constitutes plain error. As this matter is not a proper subject of judicial notice, the motion is denied.

CONCLUSION

{¶21} The father's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR

APPEARANCES:

RUSSELL A. BUZZELLI, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA E. WILES, Assistant Prosecuting Attorney, for Appellee.

MICHAEL RICKETT, Attorney at Law, for Appellee.

SARAH LITTLE, Attorney at Law, for Appellee