[Cite as *In re B. S.*, 2014-Ohio-4366.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| IN THE MATTER OF: | : | JUDGES: | |
| | : | | |
| B.S. | : | Hon. W. Scott Gwin, P.J. | |
| | : | Hon. Sheila G. Farmer, J. | |
| | : | Hon. Craig R. Baldwin, J. | |
| | : | | |
| | : | Case No. 14-CA-16 | |
| | : | | |
| | : | O P I N I O N | |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield County
                             Court of Common Pleas, Juvenile
                             Division, Case No. 2012AB13

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            September 29, 2014

APPEARANCES:

For Appellee, Cheryl Hood                For Appellant, Carl Six

CHRISTINA A. MCGILL                      LISA A. LONG
Law Office of Christina A. McGill, Esq. LLC   414 E. Main Street, Suite 200
123 S. Broad Street, Suite 240           Lancaster, OH 43130
Lancaster, OH 43130

For Guardian Ad Litem                    For  Amber Clark

Bano Itayim                              JENNIFER J. HITT
250 E. Broad Street, Suite 250           Jennifer J. Hitt, Attorney at Law, LLC
Columbus, OH 43215                       63 N. Main Street, Suite B
                                         London, OH 43140

For Fairfield County Child Protective Services

JULIE BLAISDELL
Fairfield County Prosecutor's Office
239 W. Main Street, Suite 101
Lancaster, OH 43130

*Baldwin, J.*

{¶1}   Appellant Carl Six appeals from the January 31, 2014 Entry of the Fairfield County Court of Common Pleas, Juvenile Division granting legal custody of B.S. to Cheryl Hood.

STATEMENT OF THE FACTS AND CASE

{¶2}   On January 19, 2012, a complaint was filed alleging that B.S. (DOB 1/17/12) was a dependent child.  Amber Clark, B.S.'s mother, had alleged that B.S.'s father was Bradley Smith.  On the same date, a shelter care hearing was held and temporary custody of B.S. was granted to Fairfield County Child Protective Services (FCCPS).

{¶3}   A trial on the complaint for dependency was held on March 29, 2012 and B.S. was found to be a dependent child.  Temporary custody of the child was granted to FCCPS. The trial court also ordered that the case be transferred to Morgan County since Clark resided there and had been residing there for more than one year.

{¶4}   As memorialized in a Journal Entry filed on September 10, 2012, Morgan County declined to accept jurisdiction and the case was returned to Fairfield County Juvenile Court.  A review hearing was held on October 2, 2012. At the hearing, the court found that Bradley Smith was not the child's father and ordered that genetic testing be conducted to determine whether or not appellant, who was present at the hearing, was the child's father.

{¶5}   Thereafter, on October 15, 2012, FCCPS filed a motion seeking permanent custody of B.S. FCCPS, in its motion, noted that paternity of B.S. had not yet been established. On the same date. FCCPS filed a motion requesting that the court

terminate the temporary custody of B.S. with the agency and place him in the legal custody of Cheryl Hood, the maternal great-aunt.

{¶6} On October 26, 2012, the results of the genetic testing were filed with the trial court. The results showed that appellant was the child's biological father. Thereafter, on December 11, 2012, appellant filed a motion seeking custody of B.S. Appellant, on May 30, 2013, filed a Motion for Placement. A hearing on the pending motions was, via an notice filed on June 4, 2013, scheduled for June 11, 2013.

{¶7} Appellee Cheryl Hood, on June 6, 2013, filed a Motion for Legal Custody. Hood, in her motion, noted that B.S. had been living with her since he was released from the hospital after his birth and that his two siblings also resided with her.

{¶8} At the trial that commenced on June 11, 2013, the trial court permitted FCCPS to withdraw its Motion for Permanent Custody and its Motion for Legal Custody to go to Cheryl Hood. On June 11, 2013, appellant's counsel indicated that appellant had not been served with Cheryl Hood's motion and would not waive service. Appellant asked the trial court to proceed on his Motion for Custody or, if it wished to continue the custody motion, then to proceed on his Motion for Placement. The trial court stated that it would not proceed on appellant's Motion for Custody alone and stated that "we can proceed on both motions or I guess we can continue this matter, and the child will remain with Ms. Hood." Transcript from June 11, 2013 at 15. After the trial court denied appellant's Motion for Placement without hearing, appellant agreed to proceed with both Motions for Custody.

{¶9} The trial with regards to the Motions for Legal Custody was held over a total of six days (June 11, 2013, July 30, 2013, August 23, 2013, September 27, 2013,

October 4, 2013 and November 20, 2013). Pursuant to an Entry filed on January 31, 2014, the trial court ordered that temporary custody of B.S. with FCCPS be terminated and that B.S, be placed in the legal custody of Cheryl Hood. The trial court granted appellant visitation. Findings of Fact and Conclusions of Law were attached to the trial court's Entry.

{¶10} Appellant now raises the following assignments of error on appeal:

{¶11} THE TRIAL COURT ABUSED ITS DISCRETION AND CAUSED PREJUDICIAL ERROR WHEN IT DENIED APPELLANT DUE PROCESS BY DENYING APPELLANT'S MOTION FOR PLACEMENT.

{¶12} THE TRIAL COURT ABUSED ITS DISCRETION BY THE ADMISSION OF EVIDENCE OUTSIDE THE REQUIREMENTS OF THE RULES OF EVIDENCE.

{¶13} THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY TO A THIRD-PARTY NON-PARENT WITHOUT A DETERMINATION OF SUITABILITY.

{¶14} THE TRIAL COURT'S FINDINGS OF FACT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

{¶15} Appellant, in his first assignment of error, argues that the trial court abused its discretion when it denied appellant's Motion for Placement without a hearing.

{¶16} An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable, not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶17} R.C. 2151.412(F)(2)(b) provides:

(F)(2) Any party may propose a change to a substantive part of the case plan, including, but not limited to, the child's placement and the visitation rights of any party. A party proposing a change to the case plan shall file the proposed change with the court and give notice of the proposed change in writing before the end of the day after the day of filing it to all parties and the child's guardian ad litem. All parties and the guardian ad litem shall have seven days from the date the notice is sent to object to and request a hearing on the proposed change.

(b) If it does not receive a timely request for a hearing, the court may approve the proposed change without a hearing. If the court approves the proposed change without a hearing, it shall journalize the case plan with the change not later than fourteen days after the change is filed with the court. If the court does not approve the proposed change to the case plan, it shall schedule a hearing to be held pursuant to section 2151.417 of the Revised Code no later than thirty days after the expiration of the fourteen-day time period and give notice of the date, time, and location of the hearing to all parties and the guardian ad litem of the child. If, despite the requirements of division (F)(2) of this section, the court neither approves and journalizes the proposed change nor conducts a hearing, the agency may implement the proposed change not earlier than fifteen days after it is submitted to the court.

{¶18} Appellant did not file a proposed change to the case plan and make a request for specific amendment. Nor did appellant request a hearing in his motion. Moreover, appellant's motion was filed on May 30, 2013, just twelve days before the commencement of the trial in this matter on the motions for legal custody that were pending.

{¶19} Additionally, at the conclusion of the first day of trial, the trial court indicated that did not want B.S. to be placed on visit status with appellant until it decided the pending motions. The trial court, however, did agree that visitation between appellant and B.S. could be increased.   Subsequently, on July 30, 2013, the trial court stated that because it had not heard all of the evidence and testimony, it was not in the best position to determine what placement was in B.S.'s best interest

{¶20} Based on the foregoing, we find that the trial court did not abuse its discretion in denying appellant's Motion for Placement.

{¶21} Appellant's first assignment of error is, therefore, overruled.

II

{¶22} Appellant, in his second assignment of error, argues that the trial court abused its discretion by admitting evidence of acts and/or convictions that occurred more than ten years before under Evid.R. 404 and 609.

{¶23} An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable, not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶24} Evid. R. 404 states, in relevant part, as follows: "(A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for

the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:

(1) *Character of accused.* Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

(2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

(3) *Character of witness.* Evidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607, 608, and 609."

{¶25} In turn, Evid. R. 609 states, in relevant part, as follows:

(A) General rule

For the purpose of attacking the credibility of a witness:

(1) subject to Evid.R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the

crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted.

(2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.

(B) Time limit

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances

substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

{¶26} Appellant specifically takes issue with the trial court's admission of testimony, over objection,   regarding an incident that occurred 12 years earlier involving Clarice Starcher, who was appellant's fiancé and lived with him, burning a bed. Appellant also argues that the trial court erred in allowing Kinship Exhibits 5-11, and testimony corresponding to such exhibits, over objection. Exhibit 5 is a January 31, 2005 Journal Entry from Morgan County Court showing that appellant pleaded no contest to domestic violence, a misdemeanor of the fourth degree. Exhibit 6 is a September 28, 1998 Journal Entry from Morgan County Court stating that appellant pleaded guilty to a second OMVI while Exhibit 7 is a July 25, 2005 Journal Entry from the same court stating that appellant pleaded guilty to OMVI.

{¶27} Exhibit 8 is a minor misdemeanor citation issued to appellant in April of 2006 for disorderly conduct while Exhibit 9 is a Journal Entry from Morgan County Court indicating that, in 2006, appellant pleaded guilty to trespass and resisting arrest. Finally, Exhibit 10 is a  February 5, 2007 Journal Entry from Morgan County Court stating that appellant pleaded no contest to having no operator's license while Exhibit 11 is a September 7, 2010 Journal Entry from Morgan County Court stating that a criminal complaint against appellant was dismissed on the State's motion.

{¶28} We concur with appellee that the trial court did not abuse its discretion in allowing the admission of such evidence. The evidence was not offered as character evidence or to show action in conformity therewith or for impeachment purposes. Rather, such testimony was offered for a factual history of the domestic violence issues between appellant and Starcher. The exhibits presented with respect to appellant's criminal history were relevant to appellant's fitness and were relevant as to the request by FCCPS that appellant address substance abuse and domestic violence concerns in his case plan. See *In the Matter of Epperly-Wilson Children*, 5th Dist. Stark No. 2001CA00098, 2001 WL 902450 (Aug. 6, 2001).

{¶29} Appellant's second assignment of error is, therefore, overruled.

III

{¶30} Appellant, in his third assignment of error, argues that the trial court erred in granting legal custody to Cheryl Hood, who was not B.S.'s parent, without a determination that appellant was unsuitable. We disagree.

{¶31} In the case sub judice, B.S. was adjudicated a dependent child on March 29, 2012.

> Before awarding legal custody to a non-parent, a trial court must ordinarily make a finding that each parent is unsuitable. *In re L.M.,* 2nd Dist. Greene No.2010–CA–76, 2011–Ohio–3285, ¶ 18 citing *In re Hockstock,* 98 Ohio St.3d 238, 2002–Ohio–7208, 781 N.E.2d 971. This requirement does not apply, however, in cases involving abuse, neglect, or dependency. *Id.* The Ohio Supreme Court in *In re C.R.* held '[a] juvenile court adjudication of abuse,

neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents.' 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188, paragraph one of syllabus. Thus, '[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent.' *In re L.M.,* 2011–Ohio–3285 quoting *In re C.R.,* 108 Ohio St.3d 369, paragraph two of syllabus." *In re L.H.*, 5th Dist. Muskingum No. CT 2013- 0017, 2013-Ohio-5279 at paragraph 25.

{¶32} As the Ohio Supreme Court has recognized, "no statute requires a finding of parental unfitness as a prerequisite to an award of legal custody in cases where a child is adjudged abused, neglected, or dependent." *In re C.R.,* ¶ 21.

{¶33} Appellant's third assignment of error is, therefore, overruled.

IV

{¶34} Appellant, in his fourth assignment of error, argues that many of the trial court's findings of fact are against the manifest weight of the evidence.

{¶35} In *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. *SST Bearing*

*Corp. v. Twin City Fan Companies, Ltd.,* 1st Dist. Hamilton No. C110611, 2012–Ohio–2490, ¶ 16. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley,* at ¶ 17–19, 972 N.E.2d 517. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley,* at ¶ 20 quoting *Twearson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); *See also Sheet Metal Workers Local Union No. 33 v. Sutton,* 5th Dist Stark No.2011 CA00262, 2012–Ohio–3549 citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley,* at ¶ 19.

{¶36}   "In weighing the evidence, the court appeals must always be mindful of the presumption in favor of the finder of fact. In determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the findings of fact. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Easterly,* at ¶ 21,

citing *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191– 192 (1978).

{¶37}  The trial court, in its Entry, made 82 findings of fact. Appellant argues that 26 of the findings are against the manifest weight of the evidence.  Appellant specifically takes issue with findings of fact numbers 16, 17, 18, 20, 22, 23, 24, 25, 26, 27, 35, 38, 39, 40, 48, 51, 58, 59, 65, 66, 69, 70, 74, 76, 81 and 82.

{¶38}  The trial court, in finding of fact # 16, stated that appellant believed that he was the father of B.S. at his birth. Appellant argues that this is untrue and that he was unsure of B.S.'s paternity until after learning that Bradley Smith was not the father. However, at the trial, appellant testified that he "wanted to find out from day one" if he was B.S.'s father but did not go to the hospital because B.S.'s mother told him not to. Transcript at 548. He testified that he was unsure if B.S. was his child ornot and "was just kind of waiting." Id. In addition, appellee testified that she believed that appellant knew he was the father of B.S. at the hospital at birth.

{¶39}  Appellant also challenges the court's finding of fact #17 that appellant did not contact FCCPS caseworker Brandon Henestofel until June of 2012, six months after B.S.'s birth, to attempt to assert his rights as father.  We note that appellant testified that he was waiting for B.S.'s mother to give him the caseworker's number and that she gave him the number a couple of months later. He testified that he then lost the number.

{¶40}  The next finding that appellant challenges is finding #18. The trial court, in such finding, found that appellant was determined to be the father of B.S. in October of 2012. Appellant agrees that genetic test results were filed with the trial court in October

of 2012, even though the trial court did not make an order establishing paternity until February 5, 2013. Clearly, genetic testing had determined appellant to be the father in October of 2012.

{¶41} Appellant next argues that the trial court's findings, in paragraph #20 and #24, that his actions indicate that he never took his alcohol problem seriously and that he had not admitted that he was an alcoholic were against the manifest weight of the evidence. Appellant argues that he complied with his case plan requests for alcohol and drug screenings and assessments, that he volunteered to have a SCRAM monitor put on, and that he attended AA meetings and was compliant with his sponsor. However, when asked whether he admitted that he was an alcoholic, appellant stated that he had been one, but no longer was. He was unable to state with any certainty how long he had been sober, although he believed it had been over a year. Appellant also indicated that he did not look at his AA step book very often, but was just doing what his AA sponsor and FCCPS were telling him to do. Finally, Brandon Henestofel, the caseworker, testified on the last day of trial, which was on November 20, 2013, that appellant had not been to AOD (alcohol/drug) meeting or counseling for almost two months. Based on the foregoing, we cannot say that the trial court's findings were against the manifest weight of the evidence.

{¶42} The next finding that appellant takes issue with is finding #22 in which the trial court found that appellant had one incident of tampering with his SCRAM bracelet during the pendency of this case. Henestofel testified that there was an obstruction from noon to 8:44 p.m. with appellant's SCRAM monitor. However, he also testified that the obstruction was reported to be slight and that the monitoring agency indicated that if

there had been any alcohol consumption, it would have been picked up. While the finding may have been inaccurate, we find that it is not substantial enough to prejudice appellant.

{¶43} Appellant also challenges the trial court's finding #23 that none of the drug tests that appellant submitted to at the request of FCCPS were random. At trial. Brandon Henestofel testified that appellant never provided random drug screens to him.

{¶44} In finding number #25, the trial court stated that appellant had not been fully compliant with his case plan. Henestofel, on June 30, 2013, testified that it would be accurate to say that appellant had not been fully compliant with his case plan goals. He indicated that appellant was not compliant with the recommendation that he attend individual counseling every week due to financial constraints. He also testified on the last day of trial that he was concerned that appellant was not engaged in his AOD (alcohol/drug) services at Morgan Behavioral Choices and would have liked for appellant to have done so to have acquired more "coping skills". Transcript at 1010.

{¶45} With respect to appellant's challenge to the trial court's finding, in paragraph #26, that appellant did not address many of the concerns on his case plan until the trial started, we note that there was testimony that appellant, who had alcohol problems in the past and was required to address issues of substance abuse, had not attended an AOD meeting or counseling for almost two months, did not acknowledge that he was an alcoholic and was not engaged in AOD services at Morgan Behavioral Choices.

{¶46} In finding #27, the trial court found that appellant had missed, cancelled and failed to regularly attend his family and couples counseling for domestic violence

concerns.    Henestofel testified on November 20, 2012 that appellant had made one counseling session in a four month period during the last four months.

{¶47}  Appellant also takes issue with the trial court's finding, in paragraph #35, that he had provided B.S. with only one pair of shoes that were the wrong size for the care of B.S. outside appellant's home.    Appellee testified that appellant had only provided her with one pair of shoes during the entire time that she had B.S., which was since shortly after his birth.   Appellant also testified that he purchased a pair of shoes for B.S. that were not the size that appellee was putting on B.S.

{¶48}  The trial court, in finding #38, found that appellant reported working only one day a month for his employer, citing his obligations with FCCPS as a barrier to working more. Appellant himself testified that he "lucky to make it a day a month" to his "actual job" due to running to classes. Transcript at 538.

{¶49}  The trial court, in finding #39, found that appellant had failed to visit with B.S. until January 8, 2013 and, in finding #40, found that appellant had taken B.S. to AA meetings and drug testing due to not having reliable child care. Both parties agree that finding #39 is incorrect and that the initial visitation took place in November of 2012. However, we concur with appellee that such error is not substantial. We note that appellant admitted that he took B.S. to AA meetings. He later testified that he could not leave B.S. with Clarice Starcher, his fiancée.

{¶50} The next two findings of fact that appellant challenges concern Clarice Starcher.  The trial court, in finding #48, found that Starcher had not addressed her alcohol issues with treatment and indicated that she just would not use alcohol and would be fine and, in finding #51, found that Starcher had not worn a SCRAM bracelet.

There is no indication that Starcher was asked to wear a SCRAM bracelet. At trial, Starcher testified that she was not receiving any type of alcohol or drug treatment, although she admitted a past problem with alcohol. She also stated that she was not going to AA classes or receiving any counseling and had not been through any type of treatment.

{¶51} Appellant next argues that the trial court's finding, in paragraph #58, that he refuses to use day care is against the manifest weight of the evidence. Appellant testified that he was unwilling to use daycare if he was working full-time. He testified that Clarice Starcher would be taking care of B.S. so that appellant could go back to work.

{¶52} Appellant also contends that the trial court's finding, in #59, that he and Clarice Starcher had had instances of domestic violence between them in the past is against the manifest weight of the evidence. Appellant, in his brief, concedes that there was a domestic violence situation eight years prior during which items in the home were broken. In addition, he admitted on cross-examination that Starcher had lit a bed on fire approximately twelve years previously.

{¶53} The next five findings of fact (#65, 66, 69, 70 and 74) that appellant challenges relate to Cheryl Hood. Appellant challenges the trial court's finding that Hood was able to maintain her home and an appropriate lifestyle for B.S. and his two half-siblings with the money that she received from Social Security. He also challenges the court's findings that Hood's anxiety, for which she received disability, was not so severe as to impede her ability to care for B.S. and that FCCPS had no mental health concerns with her. Appellant also argues that the findings that Hood had appropriately reported

any concerns she had with the children in her home to FCCPS and followed up as recommended and that Hood had not allowed B.S. to be taken by Amber Clark at any time and indicated to the court that any testimony stating otherwise was a lie were against the manifest weight of the evidence.

{¶54} At the trial, Brandon Henestofel testified that he believed that Hood was adequately providing care and support and for the medical needs for the children in her home and that, after sexual acting out occurred between children in her home, she appropriately addressed all of the issues. He testified that she had contacted his agency and asked for assistance when it was needed and acted appropriately. Appellee testified that she received social security for her anxiety, but that it did not impede her ability to take care of the children. She testified that the anxiety arose after she was the victim of domestic violence and that she was able to function through her disability. With respect to his argument that the finding that FCCPS has no mental health concerns with Hood is against the manifest weight of the evidence, appellant merely cites to the tone of the questioning by counsel for FCCPS. Finally, Hood testified that she had not allowed B.S. alone with his mother and that testimony to the contrary was a lie. The trial court, as trier of fact, was in the best position to assess her credibility.

{¶55} The trial court, in finding #76, found that there had been concerns since B.S.'s birth with regards to fetal alcohol syndrome. While appellant challenges this finding because there were no medical professionals who testified, we note that appellee indicated that she had such concerns and that B.S. had a lot of developmental delays. The case worker, Brandon Henestofel, testified that while no diagnosis had been made, the agency was continuing to monitor B.S.

{¶56} The final findings that appellant challenges are the trial court's findings, in #81 and #82, that the Guardian ad Litem was unable to formulate a specific recommendation as to which party should receive legal custody of B.S. and had concerns that appellant was not actively participating in his counseling and alcohol treatment and had returned B.S. to Hood with a significant allergic reaction without seeking medical treatment. Appellant also contests the finding that the Guardian was concerned that appellant did not take seriously the concerns of B.S. rolling his eyes into his head and possible seizures.

{¶57} At the final day of trial, the Guardian ad Litem testified that she had concerns that appellant would not continue with counseling after the case closed and that both appellant and Clarice Starcher had indicated that they did not know why they were in counseling. She also testified that appellant's poor attendance at his AOD (alcohol/drug) treatment concerned her. At the trial, the Guardian ad Litem stated that she was concerned that, during a meeting, appellant admitted that he had observed eye rolling and moving during a visitation with B.S., but had not reported the same.

{¶58} The Guardian ad Litem indicated that she belived taking B.S. away from appellee would be detrimental to him.

{¶59} Based on the foregoing, we find that, with limited exceptions that are not prejudicial to appellant, the trial court's findings of fact are not against the manifest weight of the evidence. While there may have been differing testimony on some issues, the trial court, as trier of fact, was in the best position to assess credibility.

{¶60} Appellant's fourth assignment of error is, therefore, overruled.

{¶61} Accordingly, the judgment of the Fairfield County Court of Common Pleas, Juvenile Division is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Farmer, J. concur.